CD/PR: USAO2016R00177

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. ELH-19-0410 |
| | * | |
| v. | * | (Wire Fraud, 18 U.S.C. § 1343; |
| | * | Aggravated Identity Theft, 18 U.S.C. § |
| MATTHEW EDWARD BLAIR, | * | 1028A(a)(1) & (b); Aiding & Abetting, |
| | * | 18 U.S.C. § 2); Forfeiture, 18 U.S.C. § |
| Defendant. | * | 982(a)(7)) |
| | * | |

\*\*\*\*\*\*\*\*\*\*

## INDICTMENT

### COUNTS ONE - FIVE
(Wire Fraud)

The Grand Jury for the District of Maryland charges:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

1. **MATTHEW EDWARD BLAIR ("BLAIR")**, a resident of Maryland, owned and operated Blair Pharmacy, which was located at 1818 Pot Spring Road, Timonium, Maryland.

2. **BLAIR** opened his pharmacy in and about August of 2014, and the pharmacy primarily dispensed compounded drugs and creams.

3. **BLAIR** used Digital RX, an internet-based software and business management program, to submit reimbursement claims to insurance companies and health care benefit programs, so that he would be paid for the prescriptions processed by Blair Pharmacy.

4. **BLAIR** used Blue Cross Blue Shield ("BCBS"), an insurance company and health care benefit program that provides health care and pharmacy benefits to its members, for his personal health care insurance.

5. In general, "compounding" is a practice in which a licensed pharmacist or other licensed

1

practitioner combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient pursuant to valid prescriptions issued by licensed medical professionals. Compounded drugs are not FDA-approved, that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs. The Maryland State Board of Pharmacy regulates the practice of compounding in the State of Maryland.

6. Compounded drugs can be prescribed by a physician, when an FDA-approved drug does not meet the health needs of a particular patient. For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug can be prepared excluding the substance that triggers the allergic reaction. Compounded drugs can also be prescribed when a patient cannot consume a medication by traditional means, such as an elderly patient or child who cannot swallow an FDA-approved pill, and needs the drug in a liquid form that is not otherwise available. Compounded medications are oftentimes more expensive than traditional, FDA-approved medications.

7. In order for pharmacies to be reimbursed for compounded medications, insurance companies require that these drugs be dispensed pursuant to a valid prescription and that they be medically necessary for the treatment of a covered illness. In other words, insurance companies will not reimburse prescription drugs, including compounded drugs, which are not medically necessary or that are dispensed without a valid prescription.

8. BCBS utilized CVS/Caremark as the administrator for all BCBS prescription benefit claims processing. CVS/Caremark's computer servers are located in Scottsdale, Arizona. All claims processed by CVS/Caremark on behalf of BCBS are routed from the submitting pharmacy to Arizona, and claim status information (i.e. approved, denied, etc.) is sent back to the pharmacy. Regardless of the place where service providers provide pharmacy benefits, BCBS adjudicates

electronically submitted claims in Arizona. In other words, claims that are electronically submitted in Maryland, necessarily travel in interstate commerce to be adjudicated by BCBS and CVS/Caremark.

## THE SCHEME TO DEFRAUD

9. Beginning on or about October 1, 2014, and continuing through on or about December 22, 2014, in the District of Maryland and elsewhere, the defendant,

## MATTHEW EDWARD BLAIR

devised and intend to devise a scheme and artifice to defraud BCBS, and to obtain money in the control of BCBS, by means of materially false and fraudulent pretenses, representations, and promises.

## THE OBJECT OF THE SCHEME TO DEFRAUD

10. It was the object of the scheme to defraud that **BLAIR** sought and obtained reimbursement and payment for drugs, and that he caused to be sought and obtained reimbursement and payment for drugs, based upon fraudulent pretenses, representations and promises that the drugs were authorized by a doctor and that the drugs were medically necessary.

## MANNER AND MEANS

11. It was part of the scheme to defraud that **BLAIR**, who was not a pharmacist, placed an advertisement for a licensed pharmacist on the internet in 2014, offering payment in return for assistance in opening a new pharmacy in Maryland.

12. It was further part of the scheme to defraud that **BLAIR** obtained approval to open a pharmacy in or about August of 2014.

13. It was further part of the scheme to defraud that **BLAIR** created and used multiple Maryland companies, including Pharmacy Distributors, LLC; Blair Compounding Pharmacy,

3

LLC; and Blair Pharmacy, LLC in the operation and payment process of his pharmacy.

14. It was further part of the scheme to defraud that **BLAIR** used and controlled bank accounts for himself and for Blair Pharmacy at Bank of America, including an account ending in 9799.

15. It was further part of the scheme to defraud that **BLAIR** created and modified compounded drug prescription forms, and that he created and modified lists of chemical ingredients on the prescription forms.

16. It was further part of the scheme to defraud that **BLAIR** entered into an agreement, and that he caused an agreement to be entered into, with Digital Business Solutions, in order to utilize Digital RX, an internet-based software program that provided Blair Pharmacy with the means to submit reimbursement claims and to bill insurance companies and health care benefit providers.

17. It was further part of the scheme to defraud that **BLAIR** submitted reimbursement claims, and caused reimbursement claims to be submitted, to insurance companies and health care benefit providers utilizing Digital RX.

18. It was further part of the scheme to defraud that **BLAIR** submitted reimbursement claims, and caused reimbursement claims to be submitted, for drugs that included a doctor's name and doctor's National Provider Identity ("NPI") number, when in fact, the doctor did not authorize the underlying prescription for the compounded drug, and for which there was no medical necessity.

### THE CHARGE

19. On or about the dates set forth below, in the District of Maryland and elsewhere,

**MATTHEW EDWARD BLAIR**

for the purpose of executing and attempting to execute a scheme and artifice to defraud, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Transfer ~~Means of Identification Used~~ |
|---|---|---|
| 1 | October 1, 2014 | Internet submission from Blair Pharmacy in Maryland, to BCBS's prescription processing center in Arizona, regarding a reimbursement claim for a compounded drug (a scar cream), for **BLAIR**, that was not authorized by a doctor, for which **BLAIR** electronically received approximately $12,299.98 into his Maryland Bank of America Bank Account # 9799 |
| 2 | November 3, 2014 | Internet submission from Blair Pharmacy in Maryland, to BCBS's prescription processing center in Arizona, regarding a reimbursement claim for a compounded drug (a scar cream), for **BLAIR**, that was not authorized by a doctor, for which **BLAIR** electronically received approximately $12,299.98 into his Maryland Bank of America Bank Account # 9799 |
| 3 | November 3, 2014 | Internet submission from Blair Pharmacy in Maryland, to BCBS's prescription processing center in Arizona, regarding a reimbursement claim for a renovo patch for **BLAIR**, that was not authorized by a doctor |
| 4 | November 25, 2014 | Internet submission from Blair Pharmacy in Maryland, to BCBS's prescription processing center in Arizona, regarding a reimbursement claim for a compounded drug (a scar cream), for **BLAIR**, that was not authorized by a doctor, for which **BLAIR** electronically received approximately $12,299.98 into his Maryland Bank of America Bank Account # 9799 |
| 5 | December 22, 2014 | Internet submission from Blair Pharmacy in Maryland, to BCBS's prescription processing center in Arizona, regarding a reimbursement claim for a compounded drug (a scar cream), for **BLAIR**, that was not authorized by a doctor, for which **BLAIR** electronically received approximately $12,299.98 into his Maryland Bank of America Bank Account # 9799 |

18 U.S.C. §1343
18 U.S.C. § 2

## COUNT SIX - TEN
## (Aggravated Identity Theft)

The Grand Jury for the District of Maryland charges that:

1. Paragraphs One through 18 of the General Allegations of this Indictment are specifically referenced and incorporated herein.

2. On or about the dates listed below, in the District of Maryland and elsewhere, the defendant,

### MATTHEW EDWARD BLAIR,

knowingly transferred, possessed and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit: Wire Fraud, in violation of 18 U.S.C. § 1343, as alleged in this Indictment, knowing that the means of identification belonged to another person, as follows:

| Count | Date | Means of Identification Used | During / In Relation To |
|---|---|---|---|
| 6 | October 1, 2014 | The name of J.S. and NPI # xxxx4033 | Count One |
| 7 | November 3, 2014 | The name of J.S. and NPI # xxxx4033 | Count Two |
| 8 | November 3, 2014 | The name of J.S. and NPI # xxxx4033 | Count Three |
| 9 | November 25, 2014 | The name of J.S. and NPI # xxxx4033 | Count Four |
| 10 | December 22, 2014 | The name of J.S. and NPI # xxxx4033 | Count Five |

18 U.S.C. § 1028A(a)(1) & (b)
18 U.S.C. § 2

## FORFEITURE

1.     The allegations of Counts One through Ten of this Indictment are incorporated herein for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c).

2.     Upon conviction of the offense in violation of 18 U.S.C. § 1343 set forth in Counts One through Five of this Indictment, the defendant,

## MATTHEW EDWARD BLAIR

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived from proceeds obtained, directly or indirectly, as a result of the offense, or is otherwise traceable to the offense, including a money judgment in an amount of no less than $49,199.92.

3.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty

the United States of America shall be entitled to seek forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).

18 U.S.C. § 982(a)(7)
21 U.S.C. § 853
28 U.S.C. § 2461(c)

                                         *Robert K. Hur /ced*

                                         Robert K. Hur
                                         United States Attorney

A TRUE BILL:

[SIGNATURE REDACTED]

                                         *9/27/19*
                                         Date