CD/PR: USAO2016R00177

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2020 MAR -3  PM 12: 24

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. ELH-19-410** |
| | * | AT BALTIMORE |
| | * | |
| **v.** | * | **(Wire Fraud, 18 U.S.C. § 1343;** BY DEPUTY |
| | * | **Aggravated Identity Theft, 18 U.S.C. §** |
| | * | **1028A(a)(1) & (b); Payment of Illegal** |
| **MATTHEW EDWARD BLAIR,** | * | **Remunerations, 42 U.S.C. § 1320a-** |
| | * | **7b(b); Money Laundering, 18 U.S.C.** |
| **Defendant.** | * | **1957; Aiding & Abetting, 18 U.S.C. § 2;** |
| | * | **Forfeiture, 18 U.S.C. § 982(a)(1); 18** |
| | * | **U.S.C. § 982(a)(7); and 21 U.S.C. § 853)** |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*

**SUPERSEDING INDICTMENT**

**Counts One – Twenty One**
(Wire Fraud)

The Grand Jury for the District of Maryland charges:

**GENERAL ALLEGATIONS**

At all times material to this Superseding Indictment:

1.    **MATTHEW EDWARD BLAIR ("BLAIR")**, a resident of Maryland, owned and operated Blair Pharmacy, which was located at 1818 Pot Spring Road, Timonium, Maryland.

2.    **BLAIR** opened his pharmacy in and about August of 2014, and the pharmacy primarily dispensed compounded drugs and creams.

3.    **BLAIR** used Digital RX, an internet-based software and business management program, to bill and submit reimbursement claims to insurance companies and health care benefit programs, so that he would be paid by the insurance companies and health care benefit programs for prescription claims submitted by Blair Pharmacy.

4.    **BLAIR** used Blue Cross Blue Shield ("BCBS"), an insurance company and health care

1

benefit program that provides health care and pharmacy benefits to its members, for his personal health care insurance.

5.    In general, "compounding" is a practice in which a licensed pharmacist or other licensed practitioner combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient pursuant to valid prescriptions issued by licensed medical professionals. Compounded drugs are not FDA-approved, that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs. The Maryland State Board of Pharmacy regulates the practice of compounding in the State of Maryland.

6.    Compounded drugs can be prescribed by a physician, when an FDA-approved drug does not meet the health needs of a particular patient. For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug can be prepared excluding the substance that triggers the allergic reaction. Compounded drugs can also be prescribed when a patient cannot consume a medication by traditional means, such as an elderly patient or child who cannot swallow an FDA-approved pill, and needs the drug in a liquid form that is not otherwise available. Compounded medications are oftentimes more expensive than traditional, FDA-approved medications.

7.    In order for pharmacies to be reimbursed for compounded medications, insurance companies and health care benefit programs require that these drugs be dispensed pursuant to a valid prescription and that they be medically necessary for the treatment of a covered illness. In other words, insurance companies will not reimburse prescription drugs, including compounded drugs, which are not medically necessary or that are dispensed without a valid prescription.

8.    BCBS utilized CVS/Caremark as the administrator for all BCBS prescription benefit claims processing. CVS/Caremark's computer servers are located in Scottsdale, Arizona. All

claims processed by CVS/Caremark on behalf of BCBS are routed from the submitting pharmacy to Arizona, and claim status information (i.e. approved, denied, etc.) is sent back to the pharmacy. Regardless of the place where service providers provide pharmacy benefits, BCBS adjudicates electronically submitted claims in Arizona. In other words, claims that are electronically submitted in Maryland necessarily travel in interstate commerce to be adjudicated by BCBS and CVS/Caremark.

9.  **BLAIR** submitted, and caused to be submitted, claims for reimbursement to TRICARE, a health care benefit program within the meaning of 18 U.S.C. §24(b), that effects interstate commerce, as that term is used in 18 U.S.C. §1343.

10.  TRICARE is a federal health care benefit program within the meaning of 42 U.S.C. § 1320a-7b(f), that effects interstate commerce, as that term is used in 42 U.S.C. § 1320a-7b(b).

11.  TRICARE provides health care and pharmacy benefits to members of the United States military, military retirees, and military family members.

12.  TRICARE utilized Express Scripts ("ESI") as the administrator for TRICARE prescription benefit claims processing. ESI's computer servers are located in New Jersey. All claims processed by ESI on behalf of TRICARE are routed from the submitting pharmacy to New Jersey, and claim status information (i.e. approved, denied, etc.) is sent back to the pharmacy. Regardless of the place where a service provider provides pharmacy benefits, TRICARE adjudicates electronically submitted claims in New Jersey. In other words, claims that are electronically submitted in Maryland necessarily travel in interstate commerce to be adjudicated by TRICARE in New Jersey.

13.  Health care benefit programs reimburse pharmacies that dispense compounded medications based upon the average wholesale price of the individual ingredients contained within

3

the compounded medications.

## THE SCHEME TO DEFRAUD

14.     Beginning on or about October 1, 2014, and continuing through on or about June 1, 2015, in the District of Maryland and elsewhere, the defendant,

## MATTHEW EDWARD BLAIR

devised and intended to devise a scheme and artifice to defraud insurance companies and health care benefit companies such as BCBS and TRICARE, and to obtain money in the control of insurance companies and health care benefit companies such as BCBS and TRICARE, by means of materially false and fraudulent pretenses, representations, and promises.

## THE OBJECT OF THE SCHEME TO DEFRAUD

15.     It was the object of the scheme to defraud that **BLAIR** sought and obtained reimbursement and payment for compounded drugs, and that he caused to be sought and obtained reimbursement and payment for compounded drugs, based upon fraudulent pretenses, representations and promises that compounded drugs were authorized by a doctor; that the compounded drugs were dispensed for a medical purpose and not based upon reimbursement rate; that the compounded drugs were medically necessary; that the compounded drugs contained the specific ingredients that were billed to health care benefit companies; and that the compounded drugs contained the amount and quantity of ingredients that were billed to health care benefit companies.

## MANNER AND MEANS

16.     It was part of the scheme to defraud that **BLAIR**, who was not a pharmacist, placed an advertisement for a licensed pharmacist on the internet in 2014, offering payment in return for assistance in opening a new pharmacy in Maryland.

17.     It was further part of the scheme to defraud that **BLAIR** obtained approval to open a pharmacy in or about August of 2014.

18.     It was further part of the scheme to defraud that **BLAIR** created and used multiple Maryland companies, including Pharmacy Distributors, LLC; Blair Compounding Pharmacy, LLC; and Blair Pharmacy, LLC in the operation and payment process of his pharmacy.

19.     It was further part of the scheme to defraud that **BLAIR** used and controlled bank accounts for himself, for Blair Pharmacy and for other businesses used and controlled by **BLAIR** at Bank of America, including bank accounts ending in #2812; #5472; #6088; #9429 and #9799.

20.     It was further part of the scheme to defraud that **BLAIR** created and modified compounded drug prescription forms, and that he created and modified lists of chemical ingredients on the prescription forms that he created.

21.     It was further part of the scheme to defraud that **BLAIR** paid independent sales marketers to market his compound drugs and to provide the prescription forms he created to doctors, namely, **BLAIR** paid independent contractors, such as Atlas Group, LLC, remuneration in the form of a percentage of the money that health care benefit programs reimbursed to his pharmacy, including the generation of reimbursements from TRICARE, a federal health care benefit program, in violation of the Federal Anti-Kickback Statute.

22.     It was further part of the scheme to defraud that **BLAIR** entered into an agreement, and that he caused an agreement to be entered into, with Digital Business Solutions, in order to utilize Digital RX, an internet-based software program that provided Blair Pharmacy with the means to submit online reimbursement claims and to bill insurance companies and health care benefit providers.

23.     It was further part of the scheme to defraud that **BLAIR** submitted reimbursement

claims, and caused reimbursement claims to be submitted, to insurance companies and health care benefit providers such as BCBS and TRICARE, utilizing Digital RX.

24.     It was further part of the scheme to defraud that **BLAIR** submitted reimbursement claims, and caused reimbursement claims to be submitted, for drugs that included a doctor's name and doctor's National Provider Identity ("NPI") number, when in fact, the doctor did not authorize the underlying prescription for the compounded drug, and for which there was no medical necessity.

25.     It was further part of the scheme to defraud that, in a continuing course of conduct, from on or about December 1, 2014 and continuing through on or about August 30, 2015, **BLAIR** submitted, and caused to be submitted, reimbursement claims to health care benefit programs for a base ingredient, namely Sterabase. In actuality, **BLAIR** caused the compounded drugs related to those claims to be filled and dispensed by his pharmacy with a different base ingredient, namely Lipoderm and Lipo Max. **BLAIR** received reimbursement from health care benefit programs related to these invalid and misbranded claims into his Bank of America Account # 9799 in the approximate amount of $2,987,000.00.

26.     It was further part of the scheme to defraud that, in a continuing course of conduct, from on or about December 1, 2014 and continuing through on or about August 30, 2015, **BLAIR** submitted, and caused to be submitted, reimbursement claims to health care benefit programs for a specific amount of a compound chemical ingredient, namely Gabapentin in an amount of 10% of the compounded drug. In actuality, **BLAIR** caused the compounded drugs related to those claims to be filled and dispensed from his pharmacy in an amount less than the amount billed, namely Gabapentin in the amount of 6% of the compounded drug. **BLAIR** received reimbursement from health care benefit programs related to these invalid, misbranded and

overbilled claims into his Bank of America Account # 9799 in the approximate amount of $1,599,000.00.

27.     It was further part of the scheme to defraud that, in a continuing course of conduct, from on or about December 1, 2014 and continuing through on or about August 30, 2015, **BLAIR** submitted and caused to be submitted, reimbursement claims to health care benefit programs for a specific amount of compounded medication, namely "360 grams." In actuality, **BLAIR** caused the compound prescriptions related to those reimbursement claims to be filled and dispensed from his pharmacy in an amount less than the amount billed, namely approximately 300 grams and milliliters.  **BLAIR** received reimbursement from health care benefit programs related to these invalid, overbilled and under filled compound drugs into his Bank of America Account # 9799 in the approximate amount of $5,776,000.00.

28.     It was further part of the scheme to defraud that, on or about March 6, 2015, **BLAIR** submitted, and caused to be submitted, a reimbursement claim to TRICARE for a vitamin compound ("Vitamin Formula #1") that was not authorized by a doctor.  **BLAIR** received reimbursement from TRICARE for Vitamin Formula #1 into his Bank of America Account # 9799 in the approximate amount of $10,145.28. Blair Pharmacy did not have the materials necessary to create the vitamin formula at the time this claim was submitted to TRICARE.

29.     It was further part of the scheme to defraud that **BLAIR** created a new compound prescription form, in which he created a "Metabolic" compounded drug box, which listed the chemical ingredients for his Vitamin Formula #1.

30.     It was further part of the scheme to defraud that, on or about March 27, 2015, **BLAIR** submitted, and caused to be submitted, a reimbursement claim for Vitamin Formula #1 for patient R.C. to TRICARE.  TRICARE approved this claim for Vitamin Formula #1 in the amount of

7

$2,250.50. This amount was significantly less than the $10,145.28 that TRICARE had previously approved Vitamin Formula #1 on March 6, 2015.

31.    It was further part of the scheme to defraud that, after the March 27, 2015 submission of Vitamin Formula #1, **BLAIR** called an ESI representative on the telephone and requested reversal of this claim submission for R.C.  **BLAIR** made this reversal request, not for a medical purpose or medical necessity for R.C., but because Vitamin Formula #1 did not reimburse in the higher amount that TRICARE had previously approved it for.

32.    It was further part of the scheme to defraud that, shortly after **BLAIR** caused the reversal of Vitamin Formula #1 on or about March 27, 2015, **BLAIR** submitted, and caused to be submitted, a reimbursement claim to TRICARE for an altered vitamin formula for patient R.C., namely Vitamin Formula #2. TRICARE approved the Vitamin Formula #2 claim in the amount of approximately $4,348.25. This amount was significantly more than the $2,250.50 amount that TRICARE had approved for Vitamin Formula #1. **BLAIR** received reimbursement for the altered vitamin formula, Vitamin Formula #2, into his Bank of America Account #9799 in the approximate amount of $4,348.25.

33.    It was further part of the scheme to defraud that, **BLAIR** modified the "Metabolic" box on his prescription form by removing an ingredient and increasing the amount of another ingredient, thereby creating Vitamin Formula #2 on the prescription form. **BLAIR**, who is not a doctor or a pharmacist, made this alteration to his prescription form not for any medial purpose or medical necessity, but for the purpose of receiving a higher reimbursement rate for Vitamin Formula #2. **BLAIR** distributed this new prescription form to a sales marketer, who was also not a doctor or a pharmacist.

34.    It was further part of the scheme to defraud that, from on or about March 27, 2015 and

continuing through to on or about August 30, 2015, **BLAIR** submitted, and caused to be submitted, numerous claims to TRICARE for reimbursement related to the altered prescription form containing Vitamin Formula #2. **BLAIR** received reimbursement from TRICARE related to this altered prescription form and Vitamin Formula #2 into his Bank of America Account # 9799 in the approximate amount of $364,000.00.

35.     It was further part of the scheme to defraud that, in a continuing course of conduct starting in approximately September 2014 and continuing through on or about August 30, 2015, **BLAIR** knowingly failed to bill for and collect copayments and coinsurance from beneficiaries of health care benefit programs.  Blair entered into contractual agreements with health care benefit programs, such as TRICARE, BCBS and CVS/Caremark, which required Blair to collect copayments and coinsurance.  However, **BLAIR** failed to collect the required copayments and coinsurance, and he would sometimes pay the copayment and coinsurance for the beneficiary, without the knowledge of the beneficiary.  **BLAIR** engaged in this conduct for the purpose of: inducing prescriptions to be filled at his pharmacy; concealing the cost of repeated copayments and coinsurance; reducing patient complaints regarding copayments and coinsurance; and reducing patient visibility and complaints regarding his pharmacy's dispensing process and the high cost of his compounded drugs.

## THE CHARGE

36.     On or about the dates set forth below, in the District of Maryland and elsewhere,

## MATTHEW EDWARD BLAIR

for the purpose of executing and attempting to execute a scheme and artifice to defraud, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Interstate Wire Communication Details |
|---|---|---|
| 1 | October 1, 2014 | Internet submission from Blair Pharmacy in Maryland, to BCBS's prescription processing center in Arizona, regarding a reimbursement claim for a compounded drug (a scar cream), for **BLAIR**, that was not authorized by a doctor, for which **BLAIR** electronically received approximately $12,239.98 into his Maryland Bank of America Bank Account # 9799. |
| 2 | November 3, 2014 | Internet submission from Blair Pharmacy in Maryland, to BCBS's prescription processing center in Arizona, regarding a reimbursement claim for a compounded drug (a scar cream), for **BLAIR**, that was not authorized by a doctor, for which **BLAIR** electronically received approximately $12,239.98 into his Maryland Bank of America Bank Account # 9799. |
| 3 | November 3, 2014 | Internet submission from Blair Pharmacy in Maryland, to BCBS's prescription processing center in Arizona, regarding a reimbursement claim for a renovo patch for **BLAIR**, that was not authorized by a doctor. |
| 4 | November 25, 2014 | Internet submission from Blair Pharmacy in Maryland, to BCBS's prescription processing center in Arizona, regarding a reimbursement claim for a compounded drug (a scar cream), for **BLAIR**, that was not authorized by a doctor, for which **BLAIR** electronically received approximately $12,239.98 into his Maryland Bank of America Bank Account # 9799. |
| 5 | December 22, 2014 | Internet submission from Blair Pharmacy in Maryland, to BCBS's prescription processing center in Arizona, regarding a reimbursement claim for a compounded drug (a scar cream), for **BLAIR**, that was not authorized by a doctor, for which **BLAIR** electronically received approximately $12,239.98 into his Maryland Bank of America Bank Account # 9799. |

| Count | Date | Interstate Wire Communication Details |
|-------|------|---------------------------------------|
| 6 | March 6, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for K.F. (360 grams of a pain cream with 10% Gabapentin and Sterabase base cream), which was dispensed in an amount less than the 360 grams and which did not contain the amount or type of ingredients that were billed to TRICARE, for which **BLAIR** electronically received approximately $7,291.91, into his Maryland Bank of America Account # 9799. |
| 7 | March 6, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for K.F. (Vitamin Formula #1) that was not authorized by a doctor, for which **BLAIR** electronically received approximately $10,145.28, into his Maryland Bank of America Account # 9799. |
| 8 | March 27, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for R.C. (360 grams of a scar cream) which was dispensed in an amount less than the 360 grams billed to TRICARE, for which **BLAIR** electronically received approximately $17,336.30, into his Maryland Bank of America Account # 9799. |
| 9 | March 27, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for R.C. (360 grams of a pain cream with 10% Gabapentin and Sterabase base cream), which was dispensed in an amount less than the 360 grams and which did not contain the amount or type of ingredients that were billed to TRICARE, for which **BLAIR** electronically received approximately $8,741.26 into his Maryland Bank of America Account # 9799. |

| Count | Date | Interstate Wire Communication Details |
|-------|------|---------------------------------------|
| 10 | March 27, 2015 | Telephone communication by **BLAIR** in Maryland, to an ESI employee in New Jersey, in which **BLAIR** caused the reversal of a $2,250.50 claim submitted by Blair Pharmacy for R.C. (Vitamin Formula #1), which had previously been approved by TRICARE. |
| 11 | March 27, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for R.C. (Vitamin Formula #2) that was not authorized by a doctor, for which **BLAIR** electronically received approximately $4,348.25 into his Maryland Bank of America Account # 9799. |
| 12 | March 30, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for R.C. (360 grams of a migraine cream) which was dispensed in an amount less than the 360 grams billed to TRICARE, for which **BLAIR** electronically received approximately $14,365.39 into his Maryland Bank of America Account # 9799. |
| 13 | March 30, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for G.M. (360 grams of a scar cream) which was dispensed in an amount less than the 360 grams billed to TRICARE, for which **BLAIR** electronically received approximately $17,336.30 into his Maryland Bank of America Account # 9799. |
| 14 | March 30, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for G.M. (360 grams of a pain cream with 10% Gabapentin and Sterabase base cream), which was dispensed in an amount less than the 360 grams, and which did not contain the amount or type of ingredients, which had been billed to TRICARE, for which **BLAIR** electronically received approximately $8,741.26 into his Maryland Bank of America Account # 9799 |

| Count | Date | Interstate Wire Communication Details |
|-------|------|----------------------------------------|
| 15 | March 30, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for G.M. (Vitamin Formula #2) for which **BLAIR** electronically received approximately $4,348.25 into his Maryland Bank of America Account # 9799. |
| 16 | March 30, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for G.M. (360 grams of a migraine cream) which was dispensed in an amount less than the 360 grams billed to TRICARE, for which **BLAIR** electronically received approximately $14,365.39 into his Maryland Bank of America Account # 9799. |
| 17 | April 8, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for K.F. (360 grams of a pain cream with 10% Gabapentin and Sterabase base cream), which was dispensed in an amount less than the 360 grams and which did not contain the amount or type of ingredients that were billed to TRICARE, for which **BLAIR** electronically received approximately $7,270.29 into his Maryland Bank of America Account # 9799. |
| 18 | April 30, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for R.C. (360 grams of a scar cream) which was dispensed in an amount less than the 360 grams billed to TRICARE, for which **BLAIR** electronically received approximately $17,336.30 into his Maryland Bank of America Account # 9799. |

| Count | Date | Interstate Wire Communication Details |
|-------|------|----------------------------------------|
| 19 | April 30, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for R.C. (360 grams of a pain cream with 10% Gabapentin and Sterabase base cream), which was dispensed in an amount less than the 360 grams, and which did not contain the amount or type of ingredients that were billed to TRICARE, for which **BLAIR** electronically received approximately $8,741.26 into his Maryland Bank of America Account # 9799. |
| 20 | April 30, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for R.C. (Vitamin Formula #2) for which **BLAIR** electronically received approximately $4,348.25 into his Maryland Bank of America Account # 9799. |
| 21 | April 30, 2015 | Internet submission from Blair Pharmacy in Maryland, to TRICARE's prescription benefit processor, ESI, in New Jersey, regarding a reimbursement claim for a compounded drug for R.C. (360 grams of a migraine cream) which was dispensed in an amount less than the 360 grams billed to TRICARE, for which **BLAIR** electronically received approximately $14,365.39 into his Maryland Bank of America Account # 9799. |

18 U.S.C. §1343
18 U.S.C. § 2

**Counts Twenty Two – Twenty Eight**
**(Aggravated Identity Theft)**

The Grand Jury for the District of Maryland charges that:

1.    Paragraphs 1 through 35 of the General Allegations of this Superseding Indictment are specifically referenced and incorporated herein.

2.    On or about the dates listed below, in the District of Maryland and elsewhere, the defendant,

**MATTHEW EDWARD BLAIR,**

knowingly transferred, possessed and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit: Wire Fraud, in violation of 18 U.S.C. § 1343, as alleged in this Indictment, knowing that the means of identification belonged to another person, as follows:

| Count | Date | Means of Identification Used | During / In Relation To |
|-------|------|------------------------------|-------------------------|
| 22 | October 1, 2014 | The name of J.S. and NPI # xxxx4033 | Count One |
| 23 | November 3, 2014 | The name of J.S. and NPI # xxxx4033 | Count Two |
| 24 | November 3, 2014 | The name of J.S. and NPI # xxxx4033 | Count Three |
| 25 | November 25, 2014 | The name of J.S. and NPI # xxxx4033 | Count Four |
| 26 | December 22, 2014 | The name of J.S. and NPI # xxxx4033 | Count Five |
| 27 | March 6, 2015 | The name of K.F. and K.M. and NPI # xxxx4308 | Count Seven |

| Count | Date | Means of Identification Used | During / In Relation To |
|-------|------|------------------------------|--------------------------|
| 28 | March 27, 2015 | The name of R.C. and S.R. and NPI # xxxx4499 | Count Eleven |

18 U.S.C. § 1028A(a)(1) & (b)
18 U.S.C. § 2

**Count Twenty Nine – Thirty Three**
**(Offer and Payment of Illegal Remunerations)**

The Grand Jury for the District of Maryland charges that:

1.     Paragraphs 1 through 35 of the General Allegations of this Superseding Indictment are specifically referenced and incorporated herein.

2.     On or about the dates listed below, in the District of Maryland and elsewhere, the defendant,

**MATTHEW EDWARD BLAIR,**

did knowingly and willfully offer to pay and did pay, remuneration directly and indirectly, overtly and covertly, in cash and in kind, to Atlas Group, LLC and others, to induce them to refer individuals and prescriptions to Blair Pharmacy for the furnishing, and arranging for the furnishing of prescription compound drugs, payment for which was made in whole and in part, under a federal health care benefit program, namely TRICARE, each payment forming a separate count as follows:

| Count | Date | Monetary Transaction |
|---|---|---|
| 29 | March 6 – August 1, 2015 | BLAIR submitted, and caused to be submitted, claims for compounded drugs to TRICARE, for which he received reimbursements from TRICARE, and BLAIR offered and paid remuneration to TRICARE beneficiaries to wit: BLAIR failed to bill for and collect copayments and coinsurance from TRICARE beneficiaries related to reimbursements TRICARE paid to his pharmacy. |
| 30 | March 17, 2015 | BLAIR made a payment from his Bank of America Account #9799, in the approximate amount of $301,164.50, to Atlas Group, LLC. |
| 31 | April 22, 2015 | BLAIR made two payments from his Bank of America Account #9799, each payment in the approximate amount of $500,000.00 (for a total of approximately $1,000,000.00), to Atlas Group, LLC. |

| Count | Date | Monetary Transaction |
|-------|------|----------------------|
| 32 | May 6, 2015 | **BLAIR** wrote a check (#1288) from his Bank of America Account #5472, in the approximate amount of $2,866.00), to Atlas Group, LLC. |
| 33 | May 28, 2015 | **BLAIR** made a payment from his Bank of America Account #1315, in the approximate amount of $240,000.00, to Atlas Group, LLC. |

42 U.S.C. § 1320a-7b(b)
18 U.S.C. § 2

### Counts Thirty Four – Thirty Six
### (Money Laundering)

The Grand Jury for the District of Maryland charges that:

1.     Paragraphs 1 through 35 of the General Allegations of this Superseding Indictment are specifically referenced and incorporated herein.

2.     On or about the dates listed below, in the District of Maryland and elsewhere, the defendant,

### MATTHEW EDWARD BLAIR,

did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of funds, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343, in that **BLAIR** transferred criminally derived funds that he received from insurance companies and health care benefit programs such as BCBS, TRICARE and CVS/Caremark, for fraudulent, misbranded and misfilled compounded drugs, and that **BLAIR** used those funds to pay for personal expenditures, including as follows:

| Count | Date | Monetary Transaction |
|---|---|---|
| 34 | April 8, 2015 | On April 2, 2015, **BLAIR** wrote a check (#1478) in the approximate amount of $195,649.00, from his Bank of America Account #2812 to Green Tree, which was paid by Bank of America on April 8, 2015, the purpose of which was to pay off the remaining balance of a mortgage on a residential property owned by **BLAIR**, located at 15 Deep Dale Drive, Timonium, Maryland. |

| Count | Date | Monetary Transaction |
|-------|------|----------------------|
| 35 | June 16, 2015 | **BLAIR** caused a wire transaction in the approximate amount of $174,813.77, from his Bank of America Account #2812 to JP Morgan Chase Bank, the purpose of which was to pay off the remaining balance of a mortgage on a residential property owned by **BLAIR**, located at 7 80th Street, Unit # 301, Ocean City, Maryland. |
| 36 | September 28, 2015 | **BLAIR** caused a wire transaction in the approximate amount of $16,784.66, from his Bank of America Account #9429 to Title Inc. Affordable Housing Trust, related to his purchase of real property located at 1707 Thornton Ridge Road, Timonium, Maryland. |

18 U.S.C. § 1957
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 982(a)(1) and (a)(7) and 21 U.S.C. § 853(p), in the event of the defendant's conviction on the counts in this Indictment.

### Wire Fraud Forfeiture

2.      Upon conviction of the offenses set forth in Counts One through Twenty-One of this Information, the defendant,

### MATTHEW EDWARD BLAIR,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982 (a)(7), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to: at least $198,135.72 in U.S. Currency, in the form of a money judgment.

### Payment of Illegal Remunerations Forfeiture

3.      Upon conviction of the offenses set forth in Counts Twenty-Nine through Thirty-Three of this Information, the defendant,

### MATTHEW EDWARD BLAIR,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982 (a)(7), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

### Money Laundering Forfeiture

4.      Upon conviction of the offenses set forth in Counts Thirty-Four through Thirty-Seven of this Information, the defendant,

### MATTHEW EDWARD BLAIR,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982 (a)(1), any property, real or

personal, involved in such offense, and any property traceable to such property, including, but

not limited to: at least $387,247.43 in U.S. Currency, in the form of a money judgment.

## **Property Subject to Forfeiture**

5.      The property to be forfeited includes, but is not limited to:

   a.      A forfeiture money judgment in United States currency

   b.      All rights, title, and interest in the real property located at 15 Deep Dale
           Drive, Timonium, Maryland, 21093

   c.      All rights, title, and interest in the real property located at 1707 Thornton
           Ridge Road, Timonium, Maryland, 21204

## **Substitute Assets**

6.      If, as a result of any act or omission of any defendant, any of the property

described above as being subject to forfeiture:

   a.      cannot be located upon the exercise of due diligence;

   b.      has been transferred or sold to, or deposited with, a third person;

   c.      has been placed beyond the jurisdiction of the Court;

   d.      has been substantially diminished in value; or

   e.      has been commingled with other property which cannot be subdivided
           without difficulty,

the United States, pursuant to 21 U.S.C. § 853(p), shall be entitled to forfeiture of substitute

property up to the value of the forfeitable property described above.  Property potentially subject

to forfeiture as a substitute asset includes, but is not limited to: all rights, title, and interest in the

real property located at 5806 York Road, Baltimore, Maryland, 21212.

18 U.S.C. § 982(a)(1)
18 U.S.C. § 982(a)(1)
21 U.S.C. § 853(p)

*Robert K. Hur / cla*

Robert K. Hur
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

FOREPERSON

3/3/2020

Date