IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> MATTHEW EDWARD BLAIR | Criminal No. ELH-19-00410 |

### MEMORANDUM

Matthew Blair, defendant, was indicted on August 27, 2019 (ECF 1) and later charged in a multi-count superseding indictment, filed on March 3, 2020. ECF 20 (the "Superseding Indictment"). The charges are rooted in Blair's operation of Blair Pharmacy, Incorporated ("Pharmacy"), which dispensed compounded drugs and creams. Blair, who is not a pharmacist, is charged, *inter alia*, with devising a scheme to defraud federal health care programs and insurance companies and laundering the funds that he derived from his scheme.

In particular, Counts One through Twenty-One charge wire fraud, committed between October 2014 and April 2015, in violation of 18 U.S.C. § 1343; Counts Twenty-Two through Twenty-Eight charge aggravated identify theft, in violation of 18 U.S.C. § 1028A(a)(1) and (b); Counts Twenty-Nine through Thirty-Three charge payments of remuneration, in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).[1] And, Counts Thirty-Four through Thirty-Six allege money laundering, in violation of 18 U.S.C. § 1957. In addition, the Superseding Indictment seeks forfeiture. *See* ECF 20 at 21-23.

---

[1] The Superseding Indictment uses both letters and numbers to label the counts.

Defendant has filed numerous motions. This Memorandum addresses only his "Motion for a Bill of Particulars." ECF 36 (the "Motion"). The government opposes the Motion. ECF 49. And, defendant has replied, ECF 61, supported by an exhibit. ECF 59.

The Court held a motions hearing on January 29, 2021 (ECF 74), at which argument was presented.[2] For the reasons that follow, I shall grant the Motion only as to Count 29. The remainder of the Motion is denied.

## I.   SUMMARY OF ALLEGATIONS[3]

In 2014, Blair opened "Blair Pharmacy, Incorporated" located in Timonium, Maryland. The Pharmacy, which was not a retail business, closed on or about November 20, 2017. *See* Affidavit of Special Agent William Thomas in Support of An Application for a Search Warrant, *In the Matter of the Search of the Premises of Cubesmart Self Storage*, ADC-18-2234, ¶ 73 (D. Md. Aug. 15, 2018). As noted, Blair is not a pharmacist. ECF 20, ¶ 16.

The Pharmacy "primarily dispensed compounded drugs and creams." *Id.* ¶ 1. "Compounding" is a practice by which a licensed pharmacist combines drug ingredients "to create a drug tailored to the need of an individual patient." *Id.* ¶ 5. Compounded drugs are not FDA approved, but may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a patient. *Id.* ¶¶ 5, 6.

In order for a pharmacy to be reimbursed for a compounded medication by an insurance company or a federal health care benefit program, it must be dispensed pursuant to a valid

---

[2] Due to the COVID-19 pandemic, a video hearing was held via Zoom.

[3] The factual background derives primarily from the Superseding Indictment (ECF 20).

prescription and medically necessary for the treatment of a covered illness. *Id.* ¶ 7. Health care benefit programs reimburse pharmacies that dispense compounded medications based on the average wholesale price of the individual ingredients contained within the compounded medication. *Id.* ¶ 13.

The Superseding Indictment alleges that from October 1, 2014 to June 1, 2015, Blair engaged in a scheme to defraud insurance companies and federal health care benefit programs. *Id.* ¶ 14. In particular, he allegedly sought and obtained reimbursement for compounded drugs based on fraudulent pretenses, representations, and promises that the drugs were authorized by doctors, medically necessary, dispensed for medical purposes, and contained the amount and quantity of ingredients that he billed to the health care benefit programs. *Id.* ¶ 15.

According to the Superseding Indictment, in connection with the scheme to defraud, Blair created modified compound drug prescription forms with modified lists of chemical ingredients. *Id.* ¶ 20. He paid independent sales marketers, such as Atlas Group, LLC ("Atlas"), to market his compound drugs and provide his modified prescription forms to doctors. *Id.* ¶ 21. And, he paid Atlas a "remuneration," in the form of a percentage of any successfully reimbursed claim that it referred to his pharmacy. *Id.*

Blair submitted the reimbursement claims to insurance companies and health care benefit providers such as Blue Cross Blue Shield ("BCBS") and TRICARE, using an internet-based software program to submit online reimbursement claims. *Id.* ¶¶ 22, 23. TRICARE is a federal health care benefit program managed by the Department of Defense Defense Health Agency ("DHA"). *Id.* ¶ 11. It provides health care and pharmacy benefits to members of the US military, military retirees, and military family members. *Id.* The claims that Blair submitted for

reimbursement included a doctor's name and National Provider Identity number, even if the doctor did not authorize the prescription for the compounded drug. *Id.* ¶ 24.

For instance, the Superseding Indictment states that from December 1, 2014, through August 30, 2015, Blair submitted claims to health care benefit programs for a base ingredient called Sterabase. *Id.* ¶ 25. However, according to the government, Blair caused the compounded drugs related to those claims to be filled and dispensed by the Pharmacy with a different base ingredient—namely, Lipoderm and Lipo Max. *Id.* Blair allegedly received reimbursement of $2,987,000 from health care benefit programs "related to these invalid and misbranded" ingredients. *Id.* He conducted a similar scheme with other compound chemical ingredients or compound medications, including Gabapentin, "360 grams," "Vitamin Formula #1," and "Vitamin Formula #2." *Id.* ¶¶ 25-34.

Moreover, as part of the alleged scheme, Blair allegedly "failed to bill for and collect copayments and coinsurance from beneficiaries of health care benefit programs," despite contractual agreements requiring him to do so. *Id.* ¶ 35. According to the Superseding Indictment, Blair engaged in this conduct to induce "prescriptions to be filled at his pharmacy"; conceal "the cost of repeated copayments and coinsurance"; reduce "patient complaints regarding copayments and coinsurance"; and reduce "patient visibility and complaints regarding his pharmacy's dispensing process and the high cost of his compounded drugs." *Id.*

Notably, the government has made significant discovery disclosures to the defense. ECF 49 at 8. Specifically, since September 2019, the government has made eight productions to defendant and provided at least 140GB of data. *Id.* It has also provided some materials subject to the Jencks Act, 18 U.S.C. § 3500. *Id.* at 8-9.

## II. DISCUSSION

### A.

An indictment implicates a defendant's constitutional due process right to reasonable notice of the charges. *See, e.g.*, *Stroud v. Polk*, 466 F.3d 291, 296 (4th Cir. 2006). It is defective if it fails to apprise the defendant, with reasonable certainty, of the accusation. *Russell v. United States*, 369 U.S. 749, 765 (1962).

Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged. . . ." And, an indictment may allege "the means by which the defendant committed the offense . . . ." *Id.* Moreover, "[a] count may incorporate by reference an allegation made in another count." *Id.*

A defendant may "move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). "The purpose of a bill of particulars is to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense." *United States v. Schembari*, 484 F.2d 931, 935 (4th Cir. 1973).

A bill of particulars does not amend or alter the indictment, but instead "merely amplifies the indictment by providing missing or additional information so that the defendant can effectively prepare for trial." *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996) (citing *United States v. Howard*, 590 F.2d 564, 567 (4th Cir. 1979)). However, "[a] bill of particulars is not to be used to provide detailed disclosure of the government's evidence in advance of trial." *United States v. Automated Medical Labs.*, Inc., 770 F.2d 399, 405 (4th Cir. 1985); *see United States v. Xiaojie*

5

*Shun*, 1:16-CR-00075 RJA (MJR), 2019 WL 4396237, at *12 (W.D.N.Y. 2019) ("[T]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories."); *United States v. Hsuan Bin Chen*, No. CR 09-110 SI, 2011 WL 332713, at *7 (N.D. Cal. Jan. 29, 2011) (denying motion for bill of particulars where "defendants seek extremely detailed evidence to which they are not entitled through a bill of particulars"); *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (denying motion for bill of particulars that sought the "'wheres, whens and with whoms' that Courts have held to be beyond the scope of a bill of particulars").

Detailed discovery may obviate the need for a bill of particulars. Therefore, when considering whether to grant a defendant's motion for a bill of particulars, it is appropriate for the district court to inquire about the information that has already been provided by the government during discovery. *United States v. Society of Independent Gasoline Marketers of America*, 624 F.2d 461, 466 (4th Cir. 1980); *see, e.g.*, *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008) (stating that a bill of particulars is unnecessary if the information relevant to preparation of defense—"elements of each charged offense, the time and place of the accused's allegedly criminal conduct, and a citation to the statute or statutes violated"—"is available through some other satisfactory form, such as discovery") (citation and internal quotation marks omitted); *United States v. Godfrey*, No. 11-10279-RWZ, 2013 WL 1414887, at *3 (D. Mass. Apr. 5, 2013) (denying bill of particulars where indictment is specific enough and discovery has been provided in searchable format); *United States v. Kemp*, No. CRIM.A.04-370, 2004 WL 2757867, at *8 (E.D. Pa. Dec. 2, 2004) ("Courts are especially reluctant to direct the filing of a bill of particulars when the government has provided the defendant with extensive pre-trial discovery.").

Nevertheless, the government's production of discovery is not determinative. In other words, the production of discovery does not necessarily obviate the need for a bill of particulars. *See United States v. Ramirez*, 609 F.3d 495, 503 (2d Cir. 2010) (stating that "district court made clear that it ordered a bill of particulars because so much discovery was produced to the defendants, not too little"); *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) ("A defendant is not fairly apprised of the necessary information merely because the government provided 'mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified' at trial."); *United States v. Aispuro*, Crim. No. 08-2936, 2010 WL 1404196, at *6 (D.N.M. Mar. 16, 2010) ("The Court also finds persuasive the Defendants' argument that, in a complex case with voluminous unorganized discovery, a bill of particulars is particularly necessary to avoid surprise at trial.").

B.

In the Motion, Blair seeks additional information from the government as to a handful of counts in order to "reduce the possibility of unfair surprise and undue prejudice at trial." ECF 36 at 1. In his reply (ECF 61), Blair narrowed his request, seeking additional information only as to Counts 10, 11, 15, 20, 28, and 29.[4]

Blair makes the same requests as to the wire fraud charges in Counts 10, 15, and 20. In Count 10, the government alleges that Blair committed wire fraud in a "[t]elephone communication" to an Express Scripts' employee, causing the reversal of a $2,250.50 claim submitted by the Pharmacy for "R.C." ECF 20 at 12.  Counts 15 and 20 allege that Blair purportedly billed TRICARE for compounded prescriptions containing "Vitamin Formula #2" and

---

[4] In his reply, Blair also sought information concerning Count 7. However, during the hearing, the defendant withdrew his request for additional information as to Count 7.

7

subsequently received reimbursements in the amounts of $4,348.25 and $4,348.25, respectively. ECF 20 at 13-14. Blair argues that these counts do not contain allegations concerning the false or fraudulent nature of the prescriptions. ECF 61 at 5. Thus, as to all three counts, Blair asks the government to specify (1) "who was defrauded and in what way"; (2) "what are the false material misrepresentations that were used" by Blair in this count; and (3) "any meetings or conversations at which the government will contend that Mr. Blair formed, joined or enlisted others to join the violations alleged in those counts." ECF 36 at 2, ¶¶ i, j, k.

Blair makes an additional request as to Count 10 because he argues that, unlike the other allegations in the Superseding Indictment, the government does not supply "*any* details concerning this conduct." ECF 61 at 4-5 (emphasis in original). Therefore, he asks the government to "specify what are the false material misrepresentations that were used by Mr. Blair in this count that the Government alleges offered Blair Pharmacy some undue advantage or worked some injury to TRICARE." ECF 36 at 2, ¶ h.

Count 11, another wire fraud charge, alleges that on March 27, 2015, Blair submitted a reimbursement claim for a compounded drug for "R.C." ECF 20 at 12.  According to Blair, the allegation in Count 11 "appears to be contradicted by discovery produced by the" government. ECF 61 at 5. In particular, the Superseding Indictment alleges that the prescription of March 27, 2015, was "not authorized by a doctor," but the government produced a written prescription that is signed by a physician, suggesting that the allegation is erroneous. *Id.*; *see* ECF 59-1 (Prescription for "R.C.", dated March 27, 2015). Therefore, Blair asks the government to specify (1) the false material misrepresentations that were made by Blair and in what way the prescription was "not authorized by a doctor[]"; (2) the precise manner in which Blair is alleged to have committed the charged offense; (3) the identity of any witnesses who are alleged to have been present when the

charged offense occurred; and (4) the actions of Blair that are alleged to have constituted the charged offense. ECF 36 at 1-2, ¶¶ a-d.

Count 28 charges identity theft, associated with the prescription at issue in Count 11. ECF 20 at 16. Blair contends that because the government's "discovery unequivocally reflects that this prescription [in Count 11] was, in fact, legitimately authorized," he requires additional information about the associated identify theft charge in Count 28. ECF 61 at 5. Blair asks the government to specify (1) the precise date when the alleged actions took place that led to the charged offenses; (2) the identity of any witnesses who are alleged to have been present when the offenses occurred; and (3) Blair's actions that are alleged to have constituted the charged offenses. ECF 36 at 2, ¶¶ e-g.

As to Counts 10, 15, and 20, the government contends that the essential elements of a wire fraud charge do not require the government to allege any "false misrepresentations" or that the defendant made any such misrepresentation. ECF 49 at 7. The essential elements of a wire fraud charge include "(1) the existence of a scheme to defraud and (2) the use of… a wire communication in furtherance of the scheme." *Id.* (quoting *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006)). And, it maintains that it has provided sufficient detail to satisfy those essential elements because the Superseding Indictment alleges "in great detail the object of the scheme to defraud," the "manner and means of the scheme to defraud," and "who was defrauded." ECF 49 at 7 (citing ECF 20, ¶¶ 15, 16-35).

With respect to Counts 11 and 28, the government asserts that defendant is seeking the "'wheres, whens, and with whoms' that courts have held to be beyond the scope of a bill of particulars." ECF 49 at 5 (citing *Mitlof*, 165 F. Supp. 2d at 569). According to the government, Blair's "request essentially boils [down] to an attempt to require the Government to preview its

9

evidence and legal theories, which is not the purpose of a bill of particulars." *Id.* at 6. Further, as to Count 28, the government notes that the Superseding Indictment already identifies the dates of the offense, the means of identification used, and "the underlying felony [*i.e.*, Count 11] during which the identifiers were used." *Id.*

I agree with the government as to these five counts. As indicated by the government, the two essential elements of a wire fraud scheme are: (1) the existence of a scheme to defraud and (2) the use of an interstate wire communication to further the scheme. 18 U.S.C. § 1343; *Curry*, 461 F.3d at 457. And, the 23-page Superseding Indictment amply satisfies these elements as to Counts 10, 11, 15, and 20. The Superseding Indictment sets forth, in detail, the existence of a scheme to defraud, including the manner and means of the scheme, ECF 20, ¶¶ 16-35, and the object of the scheme. *Id.* ¶ 15. Indeed, defendant is accused of participating in a scheme to defraud health care benefit companies by seeking reimbursements for his compounded drugs. *Id.* ¶¶ 25, 26, 27. And, as to Counts 10, 11, 15, and 20, specifically, it is alleged that, in furtherance of that scheme, defendant made submissions by way of the internet (Counts 11, 15, and 20) or engaged in telephone communications (Count 20).

This information, together with the voluminous discovery materials produced by the government, enables defendant adequately to prepare his defense, avoid prejudicial surprise, and address potential double jeopardy concerns. *Bortnovsky*, 820 F.2d at 574. Accordingly, as to Counts 10, 11, 15, and 20, I conclude that defendant is entitled to no greater particularity than the Superseding Indictment already provides. *See United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (holding that an indictment need not go further than setting forth the elements of the offense charged and need not allege "in detail the factual proof that will be relied upon to support the charges.") (citing *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir.1978), *cert. denied*, 439

U.S. 1069 (1979)); *United States v. Johnson*, 504 F.2d 622, 628 (7th Cir. 1974) ("A defendant is not entitled to recovery evidentiary matters by filing a motion for a bill of particulars."); *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003) ("The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories.").

And, because Blair's request for additional information with regard to Count 28 is predicated on his argument that he requires additional information as to Count 11, I shall also deny the request as to Count 28. In any event, as the government notes, the Superseding Indictment identifies the date, identification used, and related underlying felony for this charge. *See* ECF 20 at 16.

I reach a different conclusion as to Count 29. That count alleges that from March 6, 2015 through August 1, 2015, Blair failed to bill and/or collect copayments and coinsurance from TRICARE beneficiaries. ECF 20 at 17. Blair notes that, as part of discovery, the government has produced "dispense reports" for this period, which reflect 491 prescriptions from different doctors, at different times, and for different patients. ECF 61 at 7. Because the allegations in this count and the related document production are "all-encompassing" and "overly-broad," Blair asks the government to specify the dates, patients, prescriptions, and amounts that are the subject of the charge. ECF 36 at 2, ¶¶ l, m; ECF 61 at 7.

In its opposition, the government observes that it has already made significant and organized discovery disclosures to the defense. ECF 49 at 8. As noted, since September 2019, the government has made eight productions to defendant and provided at least 140GB of data, and it has provided some materials subject to the Jencks Act, including information related to defendant's

11

alleged use of pre-paid cards to pay patient co-pays. *Id.* at 8-9. Therefore, in its view, providing any additional information would amount to a "preview of the Government's evidence at trial." *Id.*

The fact that the government has provided significant discovery is not dispositive. *United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006) ("The Court agrees with the defendant that it is not a sufficient response to a motion for a bill of particulars to point to the voluminous discovery already provided."). Indeed, the voluminous discovery, in the context of Count 29, adds to the defendant's challenge.

The government has lodged 36 counts that allege multiple crimes committed over a period of months. As to Count 29, the discovery does not specify which of the 491 prescriptions it produced are in issue. Therefore, the discovery does not cure Blair's need for sufficient particularization to prepare for trial as to this charge. And, the burden on the defense to wade through the massive amount of discovery, as compared to the relatively minor imposition on the government that would flow from the requested disclosure, need not be overlooked.

To be sure, a motion seeking a bill of particulars may not be used as a device to obtain a preview of the government's case. But, in cases involving multiple charges of fraud, a bill of particulars may be necessary in order to provide a defendant a full and fair opportunity to prepare a defense. *United States v. Perry*, 30 F. Supp. 3d 514, 524-525 (E.D. Va. 2014) (granting defendants' request for bill of particulars in fraud case where government's identification of "thousands" of pages of documents that may or may not have been altered or falsified, failed to provide sufficient particularization because it left defendants with the "herculean task" of having to "sift through thousands of [documents] contained in 72 patient files covering a nearly four-year period with limited, if any, ability to reasonably identify which documents the Government will

attempt to prove false at trial"). And, "[t]he fact that the Government may, as it claims, be required thereby to disclose some of its evidence is not, in and of itself, a ground for the denial thereof, if the information sought is necessary…to enable the defendant to prepare his defense." *United States v. Lipshitz*, 150 F. Supp. 321, 322 (E.D.N.Y. 1957).

Given the volume of prescriptions at issue, I am persuaded that the defendant is entitled to some relief as to Count 29. In striking the proper balance between the government's legitimate interests and the interest of the defendant in being able adequately to prepare his defense, I conclude that Blair is entitled to know which prescriptions are the subject of the allegations contained in Count 29.

### III. CONCLUSION

For the reasons set forth above, I shall grant defendant's Motion, in part, and deny it, in part.

An Order follows, consistent with this Memorandum.

Date: February 5, 2021

/s/
Ellen Lipton Hollander
United States District Judge