# Exhibit C

Defendant Response to

Government Request for Additional Information



100 LIGHT STREET
BALTIMORE, MD 21202

PHONE:   410.685.1120
FAX:     410.547.0699

www.bakerdonelson.com

**TY KELLY, SHAREHOLDER**
**Direct Dial**: 410.862.1049
**E-Mail Address**: tykelly@bakerdonelson.com

February 18, 2021

**VIA EMAIL ONLY**

AUSA Christine Duey
AUSA Paul Riley
Office of the United States Attorney
District of Maryland
Christine.duey2@usdoj.gov
Paul.riley@usdoj.gov

      Re:   *United States of America v. Matthew E. Blair*
              Crim. No.: ELH-19-0410

Dear AUSAs Duey and Riley:

      We are in receipt of your letter dated February 12, 2021 concerning the defendant's January 29, 2021 expert disclosure letter (the "Notice"). Your February 12th letter states that you are "unable to determine with particularity the nature of the [expert] testimony or what opinions these proposed experts will provide." We believe the Notice, however, more than satisfies the requirement under Rule 16(b)(1)(C) that we provide a "written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705," including the "witness's opinions" and the "bases and reasons for those opinions." As you know, Rule 16(b)(1)(C) was intended to "minimize surprise" from "unexpected expert testimony," to "reduce the need for continuances," and to "provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." FED. R. CRIM. PROC. 16(b)(1)(C), 1993 Amendments. When viewed through the proper legal lens, we are confident that the Notice sufficiently complies with the applicable requirements of the Rule and furthers these goals.

      Additionally, while your February 12th letter raises many complaints concerning, for example, the "particular[s]" or "details" associated with specific defense expert opinions, we note that the Government's expert disclosure ("Government Disclosure") neglected to provide this information, as well. For instance, you request the opinion, bases, and reasons for Mr. Calhoun's proposed testimony concerning the general topic of "[h]ow compounding pharmacies work, including employees who traditionally work there, what their duties/responsibilities are (under legal obligations and business procedures), how those responsibilities are executed, [and] how pharmacy owners rely on their employees[.]" The Government, however, likewise has set forth

AUSA Christine Duey
AUSA Paul Riley
February 18, 2021
Page 2

myriad general topics it proposes to introduce in this case through proposed expert testimony, including "[t]he way in which pharmacies are approved to participate in" various payor programs, such as TRICARE or Blue Cross / Blue Shield; the "role that PBMs play in the health care industry"; and the "nature of the relationships between drug manufacturers, doctors, patients, pharmacies, PBMs, and insurance companies."[1] The Government has not supplied *particularized* opinions, or the *specific* bases and reasons for those opinions, for any of these general topics.

Another example is your request for details concerning Mr. Calhoun's opinion relating to "how pharmacies receive prescriptions from physicians (through pre-printed prescription pads) and how those prescriptions are turned into claims for payment." We note, however, that the Government's Disclosure identifies similar information – without particularity associated with a specific opinion – its experts will provide, including the "general process[es]" utilized by pharmacies to submit claims to payors and/or PBMs.[2] Likewise, though you request Mr. Calhoun's opinion concerning "how payors and PBMs changed their procedures for reimbursement of certain compounded medications during the 2000s," the rise in cost associated with compounded medications, and the role of compounding pharmacies concerning the same, we note that several of the Government's experts likewise propose to testify concerning "process[es]" used by payors and PBMs for receiving pharmacy claims, determining whether claims are reimbursable, and determining the reimbursement amounts.[3] We also note that while the Government Disclosure indicates the types of "forms" with which the Government's experts are familiar, it does not indicate whether the experts relied on any such "forms," nor does it reference any specific or particular "forms" (or indicate whether such forms have been disclosed in discovery).

Furthermore, your February 12th letter repeatedly requests the production of "the specific documents or evidence that form the bases and reasons for [the experts'] opinions," including information and/or materials reviewed by the experts in reaching those conclusions. However, Rule 16 of the Federal Rules of Criminal Procedure, which governs the parties' expert disclosures in this case, generally does *not* require the production of underlying data or foundational materials reviewed by the experts in forming their opinions. Indeed, the Government has not provided this information to the defense.

---

[1] Government Disclosure at pp. 4 (proposed testimony of Erik Tracy / Harriet Lewis), 6 (proposed testimony of Shauna Vistad), and 7 (proposed testimony of Steven McCall / Mark Shelby).
[2] *Id.* at pp. 4 (proposed testimony of Erik Tracy / Harriet Lewis), 6 (proposed testimony of Shauna Vistad), and 7 (proposed testimony of Steven McCall / Mark Shelby).
[3] *Id.* at pp. 4 (proposed testimony of Erik Tracy / Harriet Lewis), 6 (proposed testimony of Shauna Vistad), and 8 (proposed testimony of Steven McCall / Mark Shelby).

AUSA Christine Duey
AUSA Paul Riley
February 18, 2021
Page 3

Nevertheless, in the spirit of cooperation and good faith discovery, and in an abundance of caution, we provide the following additional information in response to some of your inquiries:

- As to your concerns about duplicative testimony as to between Messrs. Calhoun and Joseph, we are not planning to reiterate the same subject matter with multiple experts. We have, in an abundance of caution, noticed both of them but will not be duplicating testimony.

- As to your concerns regarding the phrase "among other things" utilized in the Notice, the topics listed therein are the topics and opinions the defense plans on introducing and discussing; in other words, there are no undisclosed topics or opinions we plan on introducing into evidence at this time. We continue to reserve the right to supplement and/or amend the Notice, including the proposed topics of expert testimony, but will, of course, give you notice in that event.

- Regarding your request for additional information concerning Mr. Joseph's recreation of the weight/volume of the specific compounded medication listed in Count 6 of the Superseding Indictment, we will provide you with additional materials, including documents/photographs that support Mr. Joseph's opinion and the underlying documents he utilized in connection with his recreation of this formula.

- Regarding some of your requests concerning Mr. McAnaney, to be clear, Mr. McAnaney's proposed testimony will provide necessary background on the implementation and purpose of the Anti-Kickback Statute ("AKS"), its application to the health care industry and the use of sales marketers specifically, the applicable regulatory guidance concerning the same, and the legal landscape concerning these issues as of October 2014. In addition to the bases set forth in the Notice, Mr. McAnaney's testimony is based on his experience providing advisory opinions regarding the AKS, which he is frequently retained to do. Mr. McAnaney's proposed testimony will educate the jury on the viewpoint of the HHS-OIG that, for example, simply employing a volume-based marketer does not necessarily violate the AKS, as demonstrated by, HHS OIG Opinion No. 98-10 (Sept. 8, 1998), among others. He will also testify regarding the importance of assessing the AKS on a case-by-case basis. He will not testify – nor do we recognize could he testify – as to the ultimate issue of whether Mr. Blair's conduct was lawful or what "he, or [] other health care counsel would conclude, regarding Mr. Blair's arrangements with marketers or Mr. Blair's business practices related to cost-sharing."

AUSA Christine Duey
AUSA Paul Riley
February 18, 2021
Page 4


      While we are confident that our Notice complies with and satisfies the requirements of Rule 16, to the extent you disagree and would like to discuss, please let us know and we will make ourselves available for a conference call.

                            Very truly yours,

                            BAKER, DONELSON, BEARMAN,
                            CALDWELL & BERKOWITZ, PC

                                */s/Ty Kelly*

                            _____

                            Ty Kelly
                            Matt Chester