**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | **CRIMINAL NO. ELH-19-410** |
| | * | |
| MATTHEW BLAIR, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\***

**GOVERNMENT'S OMNIBUS RESPONSE TO
DEFENDANT'S SECOND MOTION TO DISMISS
COUNT 29 AND DEFENDANT'S PARTIAL MOTION TO DISMISS
COUNTS 6, 8, 9, 12-14, 16-19 AND 21 AND MOTION TO STRIKE PARAGRAPH 27**

The United States of America respectfully submits this Omnibus Response to Defendant's

second Motion to Dismiss Count 29 (ECF No. 108) and Defendant's Partial Motion to Dismiss

Counts 6, 8, 9, 12-14, 16-19 and 21 and Motion to Strike Paragraph 27 for alleged improper grand

jury presentation or, alternatively, Motion for Production of Certain Portions of Grand Jury

Transcripts (ECF No. 119). The Court should deny these motions.

**I.   Both Of Defendant's New Motions Are Untimely, And Defendant Has Not
      Established "Good Cause."**

As an initial matter, the Court should deny Defendant's recently-filed motions because they

were filed out of time, and Defendant has not established good cause to excuse their untimeliness.

Indeed, Defendant's Motion to Dismiss Count 29 (ECF No. 108) was filed on April 27, 2021, and

his Partial Motion to Dismiss Counts 6, 8, 9, 12-14, 16-19 and 21 and Motion to Strike Paragraph

27 (ECF No. 119) was filed on June 4, 2021—approximately three months and four months,

respectively, after the January 29, 2021 motions hearing in this case and many months after the

October 19, 2020 deadline for motions set by the Court. Defendant does not even attempt to show

good cause for his late filings. Nor could he. This is reason enough for the Court to deny his

belated motions.

Motions such as those Defendant has filed here must be filed prior to trial or by the deadline established by the court if "if the basis for the motion is then reasonably available." *See* Fed. R. Crim. P. 12(b)(3)(C), 12(c). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). The Fourth Circuit has found "good cause" to allow an untimely motion to suppress "where, for instance, the delay in filing the suppression motion was caused by the government's failure to turn over the evidence sought to be suppressed." *United States v. Sweat*, 573 F. Appx. 292, 295 (4th Cir. 2014) (unpublished) (citing *United States v. Chavez*, 902 F.2d 259, 263-64 (4th Cir. 1990)). No such circumstances are present here.

Indeed, Defendant could have made the arguments he advances now earlier but chose not to. Count 29 has already been the subject of numerous filings by the parties. *See* ECF No. 37 (Motion to Dismiss Count 29); ECF No. 49 (Response to Motion to Dismiss Count 29); ECF No. 63 (Reply to Response to Motion to Dismiss Count 29); ECF No. 78 (Supplemental Government Response to Motion to Dismiss Count 29); ECF No. 93 (Supplemental to Defendant's Brief Regarding Motion to Dismiss Count 29 of Superseding Indictment for Failure to State an Offense); ECF No. 100 (Correspondence re: Fourth Circuit's Recent Decision in *United States v. Rafiekian*). Defendant offers no justification why he did not make the arguments as to Count 29 he makes now earlier. No such justification exists.

The same is true of Defendant's Partial Motion to Dismiss Counts 6, 8, 9, 12-14, 16-19 and 21 and Motion to Strike Paragraph 27 (ECF No. 119). This Motion attacks allegations in the Superseding Indictment (the "Indictment"), which was returned on March 3, 2020, concerning what Defendant calls the Government's "underfilling-overbilling theory" on the ground that it "defies science," ECF No. 119 at 6, and based upon the "recently conducted" experiment of Mr. David Joseph, one of Defendant's proposed expert witnesses, *id.* at 6. But, again, Defendant offers

no justification why he could not have made these arguments earlier.  Further, regarding the discovery records that Defendant has attached to his Motion, these documents were all disclosed before the Superseding Indictment was returned on March 3, 2020, or shortly thereafter.  Exhibits C and D were disclosed in the Government's production on September 16, 2019.  Exhibit F was disclosed in the Government's production on November 14, 2019.  Exhibit E was disclosed in the Government's production on March 9, 2020.  It thus simply cannot be said that the information on which the Motions are based were not reasonably available to Defendant.  Good cause cannot be established here, and Defendant's Motion should therefore be denied. *See United States v. Ruhe*, 191 F.3d 376, 386–87 (1999) (no good cause was present to raise an untimely suppression issue where the defendant could have with due diligence discovered the information necessary to raise the issue); *cf. United States v. White*, 850 F.3d 667, 673 (4th Cir. 2017) (allowing untimely motion where information underlying motion was not reasonably available to defendant).  In any event, even if there were good cause for the Court to entertain Defendant's late-filed Motions, they fail on the merits, as discussed below.

## II.     The Defendant's Second Motion to Dismiss Count 29 For Failure to State an Offense (ECF No. 109) Should Be Denied.

Defendant moves, for the second time, to dismiss Count 29 of the Superseding Indictment, which charges a violation of 42 U.S.C. § 1320a-7b(b) (the "Anti-Kickback Statute" or "AKS"), claiming, again, that it is improperly pled.  ECF No. 109.  Once again, Defendant seeks to insert safe harbor regulation elements into an AKS violation, by arguing that the Government used improper language in the "to wit" portion of Count 29.  For the reasons that follow, Defendant is incorrect, and the Court should deny his motion.

### A.     The Language in the Indictment is Proper.

As previously noted in the Government's first response to dismiss Count 29, Fed. R. Crim. P. 7(c)(1) governs the required content and form of an indictment.  It provides that an indictment

"must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment that tracks statutory language is constitutionally sufficient if "'accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense' . . . with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (citation omitted). "More specifically, an indictment is legally sufficient (1) if it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense." *United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2011); *see also United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002); *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999); *United States v. Darby*, 37 F.3d 1059, 1063 (4th Cir. 1994).

Here, the General Allegations of the Indictment provide, in relevant part, as follows:

35.    It was further part of the scheme to defraud that, in a continuing course of conduct starting in approximately September 2014 and continuing through on or about August 30, 2015, **BLAIR** knowingly failed to bill for and collect copayments and coinsurance from beneficiaries of health care benefit programs.  Blair entered into contractual agreements with health care benefit programs, such as TRICARE, BCBS and CVS/Caremark, which required Blair to collect copayments and coinsurance.  However, **BLAIR** failed to collect the required copayments and coinsurance, and he would sometimes pay the copayment and coinsurance for the beneficiary, without the knowledge of the beneficiary.  **BLAIR** engaged in this conduct for the purpose of: inducing prescriptions to be filled at his pharmacy; concealing the cost of repeated copayments and coinsurance; reducing patient complaints regarding copayments and coinsurance; and reducing patient visibility and complaints regarding his pharmacy's dispensing process and the high cost of his compounded drugs.

ECF No. 20, p. 9.

The General Allegations of the Indictment, including Paragraph 35 as detailed above, were incorporated into Count 29 of the Indictment as follows:

4

1.      Paragraphs 1 through 35 of the General Allegations of this Superseding Indictment are specifically referenced and incorporated herein.

2.      On or about the dates listed below, in the District of Maryland and elsewhere, the defendant,

**MATTHEW EDWARD BLAIR,**

did knowingly and willfully offer to pay and did pay, remuneration directly and indirectly, overtly and covertly, in cash and in kind, to Atlas Group, LLC and others, to induce them to refer individuals and prescriptions to Blair Pharmacy for the furnishing, and arranging for the furnishing of prescription compound drugs, payment for which was made in whole and in part, under a federal health care benefit program, namely TRICARE, each payment forming a separate count as follows:

| Count | Date | Monetary Transaction |
|-------|------|----------------------|
| 29 | March 6 – August 1, 2015 | **BLAIR** submitted, and caused to be submitted, claims for compounded drugs to TRICARE, for which he received reimbursements from TRICARE, and **BLAIR** offered and paid remuneration to TRICARE beneficiaries to wit: **BLAIR** failed to bill for and collect copayments and coinsurance from TRICARE beneficiaries related to reimbursements TRICARE paid to his pharmacy. |

ECF. No. 20, at 17.

Here, as is plain from the language detailed above, the Indictment tracked the statutory language of the AKS, and included "a statement of the facts and circumstances" that informed Defendant of the offense he charged. *Hamling*, 418 U.S. at 117–18. The Government provided notice of the facts and circumstances regarding the allegations, including that from September 2014 through August 2015, Defendant knowingly failed to bill for and collect copayments from beneficiaries; that he entered into contracts that required him to collect copayments; that he failed to collect the required copayments; that he would sometimes pay the copayment for the beneficiary without the knowledge of the beneficiary; that Defendant did this to induce prescriptions to be filled at his pharmacy; to conceal costs of repeated copayments; to reduce patient complaints; and to reduce visibility and complaints regarding the compounded creams dispensed from his

pharmacy. The language in paragraph 35 and in Count 29 plainly identifies that Defendant violated the AKS by knowingly and willfully providing remuneration in the form of cost-sharing waivers, directly and indirectly, overtly and covertly, by failing to bill for and collect copayments as further described in paragraph 35, in order to willfully induce TRICARE-related claims submissions associated with those TRICARE beneficiaries, at Defendant's pharmacy.

Defendant complains that the Government has improperly included the words "bill for and collect" in the "to-wit" portion of Count 29. Defendant claims that this language alleges conduct that is not a criminal allegation, because he claims that it does not constitute an offense. ECF No. 109, p. 2.[1] In his motion to dismiss, Defendant asserts *facts* indicating his position that he did collect copayments and he asserts *facts* that he affirmatively sent invoices to beneficiaries, and that this matter involves a simple "fail[ure] to collect monies from unwilling payors."[2] *Id.* However, the Government intends to introduce *facts* to the contrary regarding Defendant's knowing and willful payment of remuneration to beneficiaries in the form of copayment waivers to induce

---

[1] In his motion, Defendant asserts the claim that the term "failed to bill for and collect copayments" amounts to an allegation that is not criminal, because he argues that the "unwilling beneficiaries" are to blame for non-payment of the copayment. ECF No. 108 at 7. However, in his motion to dismiss, Defendant entirely fails to even reference paragraph 35 of the Indictment. Paragraph 35 of the Indictment is clearly incorporated into Count 29, and the language in the paragraph provides detailed notice regarding Defendant's wrongful conduct regarding copayment waivers, including specific notice related to Defendant's knowing and willful acts associated with the conduct alleged in Count 29. This detailed "statement of the facts and circumstances" clearly passes the *Hamling* standard by properly alleging the offense and providing Defendant notice of the allegations regarding his copayment waiver misconduct. 418 U.S. at 117–18. As such, Defendant's reliance on *United States v. Bryant-Royal*, No. 12-0040, 2012 WL 3253165 (D. Md. Aug. 6, 2012) is clearly misplaced. Further, Defendant's reliance on case law, *See generally* ECF. No 108 at 8-9, is also misplaced, regarding the well-established principal that when a statute sets forth, disjunctively, several ways by which an offense may be committed, an indictment correctly and properly charges the different means of the statute conjunctively. *United States v. Vann*, 660 F.3d 771, 774-75 (4th Cir. 2011); *see e.g.*, *The Confiscation Cases*, 87 U.S. 92, 104, 22 L. Ed. 320, 22 L. Ed. 327 (1874) (explaining that a disjunctive charge is "wholly insufficient" and lacks "necessary certainty," as it fails to provide "definite notice of the offence charged" and does not protect against "subsequent prosecution for one of the several offences"). In this case, the government properly included conjunctive language throughout the indictment, for this very purpose, including in the portion of the indictment that tracks the AKS statute (i.e., "directly *and* indirectly, overtly *and* covertly, in cash *and* in kind"). There is nothing improper or "fatal" regarding the Government's use of the word "and" throughout the indictment, including in the "to wit" portions of the indictment, and the authority cited by Defendant simply does not provide a basis for the relief Defendant seeks.

[2] The Government has provided Defendant with discovery related to information about copayments received by Defendant, including records from his credit card processor, his bank, and invoice-related documents recovered during the search of his storage facility.

prescriptions to be filled and refilled at his pharmacy.  The facts that the government will introduce to support the "facts and circumstances" alleged in the Indictment include, but are not limited to: numerous statements made by Defendant orally and in writing which evidence his knowledge and willful intention to waive or pay beneficiary copayments; records indicating Defendant's payment of certain beneficiaries copayments; observations made by witnesses regarding Defendant's copayment collection practices; records related to copayments received and not received; and testimony from beneficiaries.  In other words, whether Defendant waived, billed for, or collected copayments from beneficiaries in this case will be a matter of *fact* for the jury to decide.  Defendant seeks to couch a factual issue in a legal issue, and claims that Defendant has not been charged with a crime in the indictment because the government used the words "bill for and collect."  This is incorrect.  The Government properly included a description of Defendant's conduct in paragraph 35 and in Count 29 of the indictment, which provided notice of the charges against him, and which properly alleged a violation of the AKS.  Defendant is of course free to attempt to introduce admissible evidence that he believes runs contrary to this evidence, but the Government fully intends to prove these facts to the jury.

### B. Defendant Improperly Shifts Elements of an Affirmative Defense to the Government.

In his original Motion to Dismiss Count 29, Defendant argued, incorrectly, that the Government failed to state a violation of the AKS because the Indictment did not incorporate language from a civil statute into the language of the criminal Indictment.  ECF No. 37, pp. 4-5.  Of course, that civil statute simply does not apply in this case.  See ECF No. 78.  Now, Defendant makes essentially the same argument and claims the by using the words "bill for and collect" that the Government fails to state a criminal offense.  Again, Defendant tries to incorporate language from the civil statute to claim the "something more" is required.  To the contrary, *nothing* more is

required.[3]  The only requirement necessary to state a violation of the AKS, is the allegation of a

knowing and willful offer or payment of remuneration to induce a referral for an item or service

paid for by a federal program such as TRICARE.  The AKS, 42 U.S.C. § 1320a-7b(b), provides in

relevant part as follows:

> **(2)** Whoever knowingly and willfully offers or pays any remuneration (including
> any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or
> in kind to any person to induce such person—
>
> > **(A)**   to refer an individual to a person for the furnishing or arranging for the
> > furnishing of any item or service for which payment may be made in whole
> > or in part under a Federal health care program, . . .
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than
> $25,000 or imprisoned for not more than 5 years, or both.

42 U.S.C. § 1320a-7b(b)(2)(A).

The AKS **does** **not** **require** anything more than what is described in the statutory language

above.  In other AKS cases, Courts have determined that, in certain circumstances, the AKS's safe

harbor regulations relating to the term remuneration, can sometimes qualify as an affirmative

defense under certain, specific circumstances.  "An affirmative defense does not negate an element

of a crime; it excuses punishment for a crime the elements of which have been established and

admitted."  *United States v. Thompson*, 554 F.3d 450, 452 n. 2 (4th Cir.2009) (internal quotations

omitted).  By contrast, an essential element of an offense is one "whose specification is necessary

to establish the very illegality of the behavior[.]"  *United States v. Hooker*, 841 F.2d 1225, 1232

---

[3]   Indeed, Defendant's Motion reads in some respects like a motion to dismiss a civil complaint pursuant to
Fed. R. Civ. P. 12(b)(6).  Obviously, the standards applicable to civil and criminal motions to dismiss are vastly
different.  *Compare* Fed. R. Civ. P. 12(b)(6) *and* Fed R. Civ. P. 9(b) *and United States ex rel Godfrey v. KBR Inc*,
2010 WL 55510 (4th Cir. Jan. 6, 2010), *with United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2011) ("[A]n
indictment is legally sufficient (1) if it alleges the essential elements of the offense, that is, it fairly informs the accused
of what he is to defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a
future prosecution for the same offense.")

(4th Cir.1988).

In *Norton*, The Fourth Circuit determined that a defendant was not entitled to a jury instruction involving a AKS safe harbor provision because the defendant in that case did not establish all seven of the requirements in 42 CFR § 1001.952(d), relating to the personal services and management contract safe harbor. *United States v. Norton*, 17 F. App'x 98, 102 (4th Cir. 2001) (unpublished). Because the defendant in *Norton* failed to present sufficient evidence of the affirmative defense, the Fourth Circuit held that the district court was not required to instruct the jury on that affirmative defense. *Id. See also*; *United States v. George*, 900 F.3d 405, 413; *United States v. Vernon*, 723 F.3d 1234, 1271 (11th Cir. 2013); *United States v. Rogan*, 459 F. Supp. 2d 692, 716 (N.D. Ill. 2006) aff'd, 517 F.3d 449 (7th Cir. 2008); *United States v. Yielding*, 657 F.3d 688, 700 (8th Cir. 2011); *United States v. Robinson*, 505 F. App'x 385, 387 (5th Cir. 2013) (unpublished).

The only potential affirmative defense that could conceivably apply regarding this matter is 42 CFR § 1001.952(k). This safe harbor regulation was first enacted on January 6, 2017, and states, in pertinent part:

> (k) Waiver of beneficiary copayment, coinsurance and deductible amounts. As used in section 1128B of the Act, "remuneration" does not include any reduction or waiver of a Federal health care program beneficiary's obligation to pay copayment, coinsurance or deductible (for purposes of this subparagraph (k) "cost-sharing") amounts *as long as all the standards are met* within one of the following categories of health care providers or suppliers.
> . . .
> > (3) If the cost-sharing amounts are owed to a pharmacy (including, but not limited to, pharmacies of the Indian Health Service, Indian tribes, tribal organizations, and urban Indian organizations) for cost-sharing imposed under a Federal health care program, *the pharmacy may reduce or waive the cost-sharing amounts if*:
> >
> > > (i) The waiver or reduction is not offered as part of an advertisement or solicitation; *and*
> > >
> > > (ii) Except for waivers or reductions offered to subsidy-eligible individuals (as defined in section 1860D-14(a)(3)) to which only requirement in paragraph (k)(3)(i) of this section applies:

9

(A) The pharmacy does not routinely waive or reduce cost-sharing amounts; *and*

(B) The pharmacy waives the cost-sharing amounts only after determining in good faith that the individual is in financial need *or* after failing to collect the cost-sharing amounts after making reasonable collection efforts.

42 CFR § 1001.952(k) (2017) (emphasis added).

Defendant's cost-sharing conduct, related to TRICARE beneficiaries, occurred in 2015. This potential affirmative defense did not become effective until 2017.[4]  However, if the Court determines that equity or some other authority dictates that this safe harbor protection could potentially apply to Defendant's 2015 conduct, then the defendant would have to prove each element of this affirmative defense *before* he is entitled to a jury instruction:

(1) The waiver or reduction was not offered as part of an advertisement or solicitation; *and*

(2)  The pharmacy does not routinely waive or reduce cost-sharing amounts; *and*

    a. The pharmacy waives the cost-sharing amounts only after determining in good faith that the individual is in financial need, *or*

    b. The pharmacy waives the cost-sharing amounts only after making reasonable collection efforts.

*See* 42 CFR § 1001.952(k)(emphasis added).

The Government has *no burden whatsoever* to plead or prove any element of this safe harbor regulation.  Nor is the Government required to speculate as to which affirmative defenses

---

[4] The Health and Human Services Office of the Inspector General noted that prior to the rule change, "subsection (k) is limited to reductions or waivers of Medicare and State health care program beneficiary cost-sharing" and the Office "solicited comments about expanding this safe harbor to protect waivers under all Federal health care programs, if applicable, and subject to terms of each type of cost-sharing waiver in subsection (k)." 81 FR 88368, 88371.  As such, it is clear that the protections in subsection (k) did not previously protect a pharmacy's waiver of a TRICARE beneficiary's cost share before the new provision became effective in 2017.  Defendant continues his attempt to dismiss Count 29, by requiring the Government to plead and prove language from a non-applicable civil law statute. ECF No. 108 at 4.  As previously briefed, the Civil Money Penalties Law, 42 U.S.C. § 1320a-7a, simply does not apply in this criminal case involving the TRICARE Federal health care program – the civil statute does not provide a safe harbor in this case.

the defendant may attempt to raise.  Instead, the **Defendant must prove** each and every element

of the safe harbor, before he is entitled to a jury instruction on the affirmative defense.  42 CFR §

1001.952(k) ("'remuneration' does not include any reduction or waiver of a Federal health care

program beneficiary's obligation to pay copayment, coinsurance or deductible [for purposes of

this subparagraph (k) "cost-sharing"] amounts *as long as all the standards are met*)(emphasis

added).

Specifically, pursuant to 42 CFR § 1001.952(k)(3)(i), Defendant bears the burden of

establishing that he did not advertise or solicit the cost sharing waiver.  If there is evidence that

the Defendant did advertise the waiver – for instance if there is evidence that he informed others

that compound prescriptions filled at his pharmacy would be provided at no cost to the beneficiary,

then the Defendant *is not entitled* to a jury instruction on this affirmative defense.

If Defendant can somehow show that he did not advertise cost-sharing waivers, then

pursuant to 42 CFR § 1001.952(k)(3)(ii)(A), he would also have to prove that he did not routinely

waive copayments.  If Defendant cannot demonstrate that his copayment waivers were not a

routine part of his business (for example, if there is evidence that Defendant waived cost sharing

for many or most of the beneficiaries), then he *is not entitled* to a jury instruction related to this

affirmative defense.[5]

If Defendant can somehow show that he did not advertise cost-sharing waivers *and* that he

did not routinely waive copayments, then pursuant 42 CFR § 1001.952(k)(3)(ii)(B), Defendant

would also have to establish that his (rare and uncommon) cost-sharing waiver was waived only

after he determined, in good faith, that (1) the individual he waived the copayment for was in

financial need, *or* (2) that he made reasonable collection efforts, but failed to collect the copayment

_____

[5] Contrary to Defendant's repeated argument that the Government is somehow required to plead and prove that Defendant's cost sharing waivers were routine, the exact opposite is true – Defendant is required to prove that *he did not routinely waive copayments*.  In other words, Defendant must prove that any cost sharing waiver at his pharmacy was the uncommon or rare exception, rather than the rule.

after those reasonable collection efforts.

In other words, the Government is not required to plead or prove any of these matters. Instead, the burden is entirely on Defendant. If Defendant submits evidence that he sent invoices to TRICARE beneficiaries and that it was the beneficiaries who improperly refused to pay their copayments, ECF No. 108, p. 10, then Defendant will possibly be entitled to a jury instruction on this affirmative defense *if* he can *also* show that his cost-sharing waivers were not part of an advertisement *and* that he did not routinely waive copayments at his pharmacy. If he can somehow establish these prerequisites, then it will be for the jury to decide, as a matter of *fact*, whether his alleged invoices amount to reasonable collection efforts (or not).

Defendant shifts these burdens to the Government by arguing that the language in the Indictment fails to state an offense. This attempt to shift elements of an affirmative defense to the Government is creative, but it is also clearly contrary to the law. The Government respectfully requests that this Court deny Defendant's motion to dismiss, because the language in Count 29, incorporating paragraph 35, properly states a violation of the AKS.

### C.    Defendant Comes Nowhere Close To Establishing That He Is Entitled To The Production Of Grand Jury Materials Related To Count 29.

Defendant states that in light of his motion to dismiss Count 29, his understanding of the AKS—which is incorrect—and what he calls "the complex and confusing nature of the AKS," ECF No. 108 at 12, that he should be entitled to any legal instruction as to Count 29 that was provided to the Grand Jury. The Court can easily reject this argument, as Defendant does not and cannot meet his heavy burden in establishing that he is entitled to any such Grand Jury materials. As one court aptly put it, "defendants' motion is speculative, general and does not show particularized need. If inspection of grand jury instructions were granted in this case they would be subject to production on a mere desire framed as a claim that the indictment is complex or being

challenged. That is insufficient." *United States v. Welch*, 201 F.R.D. 521, 525 (D. Utah 2001). So too here.

### 1.    Applicable Law.

The principle of grand jury secrecy dates back to the 17th century and has been described by the Supreme Court as "an integral part of our criminal justice system." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 & n.9 (1979) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."). At the same time, the law recognizes that there are some limited situations where disclosure of grand jury material may be appropriate. *Id.* at 222. Thus, while FED. R. CRIM. P. 6(e) establishes a strong general presumption in favor of preserving grand jury secrecy, it also establishes certain potential exceptions. Relevant here is Rule 6(e)(3)(ii), which provides that the court may authorize disclosure of matters occurring before the grand jury "at the request of a defendant who shows "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."

The law presumes, absent a strong showing to the contrary, that a grand jury acted within the legitimate scope of its authority. *United States v. R Enterprises, Inc.*, 498 U.S. 292, 300-01 (1991); *see also United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring in the judgment) (presumption of regularity accorded to grand jury proceedings "generally may be dispelled only upon particularized proof of irregularities in the grand jury process"); *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974). Thus, it is well-established that a defendant or other party seeking disclosure of grand jury material must make "a *strong* showing of particularized need" for disclosure in order to overcome the presumption in favor of grand jury secrecy. *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 443 (1983) (emphasis added); *Douglas Oil Co.,*

441 U.S. at 222; *United States v. Pac. Gas & Elec. Co.*, 2015 WL 3958111, at *8 (N.D. Cal. June 29).

"Mere unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the 'particular need' required to outweigh the policy of grand jury secrecy." *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980). "Erroneous grand jury instructions do not automatically invalidate an otherwise proper grand jury indictment." *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982). Instead, the movant must make a showing that there is a substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury. *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972). Indeed, courts have consistently rejected the idea that the legal instructions given by the Government[6] to the grand jury should be subject to routine disclosure, and have declined to order the government to produce these materials. *See, e.g.*, *United States v. Barry*, 71 F.3d 1269, 1274 (7th Cir. 1995) (rejecting the defendant's contention that the legal instructions given to the grand jury were ministerial in nature and did not fall within the scope of grand jury secrecy); *United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir. 1986) (refusing to require the Government to produce the grand jury instructions because "Challenges going only to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face"); *United States v. Indivior Inc.*, No. 1:19CR00016, 2019 WL 6039969, at *1 (W.D. Va. Nov. 14, 2019) (concluding that speculative allegations regarding Government misconduct were insufficient and legally incorrect, and that the defendant had failed to demonstrate a strong showing of particularized need for the transcripts of

---

[6] It is well established that legal instructions do not even need to be given at all. *United States v. Monzon-Luna*, No. 11-CR-722 S-4 RRM, 2014 WL 223100, at *1 (E.D.N.Y. Jan. 21, 2014); *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) ("The prosecutor is under no obligation to give the grand jury legal instructions."); *United States v. Kasper*, No. 10CR318S, 2011 U.S. Dist. LEXIS 152388, at *19 (W.D.N.Y. June 20, 2011) (The Government has no duty to provide any instruction to a Grand Jury); *United States v. Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002).

the grand jury instructions); *United States v. Huntress*, 2015 WL 631976, at \*27-28 (W.D.N.Y. Feb. 13, 2015); *United States v. Acherman*, 2015 WL 6126811, at \*1-\*3 (D. Mass. Oct. 16, 2015); *United States v. Larson*, 2012 WL 4112026, at \*4 (W.D.N.Y. 2012) (ruling that "even if [the grand jury] was improperly instructed, that error is not a basis for the defense obtaining the Grand Jury minutes"); *United States v. Buske*, 2010 WL 3023364, at \*2 (E.D. Wisc. July 29, 2010) (denying request for disclosure of legal instructions on the elements of money laundering); *United States v. Morales*, 2007 WL 628678, at \*4 (E.D. Cal. Feb. 28, 2007); *United States v. Zhitlovsky*, 2003 WL 21939024, at \*2-\*3 (D. Kan. July 29, 2003) (rejecting defense's bid for disclosure of the legal instructions given to the grand jury as "nothing more than a desire to set out on a fishing expedition"); *United States v. Abrams*, 539 F. Supp. 378, 388-89 (S.D.N.Y. 1982) (declining to order production of grand jury instructions and finding that the prosecutor's declination to do so "was quite proper").

Simply put, Defendant has the burden to defeat the presumption of regularity that attaches to grand jury proceedings as a matter of law. *R. Enters.*, 498 U.S. at 301. In order to defeat this presumption, the Defendant must prove that (1) the violation constituted grave misconduct that "substantially influenced the grand jury's decision to indict" or creates "grave doubt that the decision to indict was free from the substantial influence of such violations," and that (2) Defendant was actually prejudiced. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (first prong);[7] *United States v. Feurtado*, 191 F.3d 420, 424–425 (4th Cir. 1999) (first and second prong). Here, Defendant can do neither.

---

[7] "[A] district court may not dismiss an indictment based on errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). In *Bank of Nova Scotia*, the Supreme Court held that isolated episodes of prosecutorial misconduct, including causing IRS witnesses to testify falsely, mistreating a defense expert witness in the presence of grand jurors, abusing its power to offer pocket immunity, and permitting witnesses to testify in tandem, during the course of a 20-month grand jury investigation "involving dozens of witnesses and thousands of documents" could not have had a substantial effect on the grand jury's decision to indict. *Id.* at 263.

### 2. Defendant's Speculative Assertions Are Insufficient To Require The Production Of Any Grand Jury Materials As To Count 29.

Applying the above authority, the Court should deny Defendant's request. Defendant has not established that the Government misstated the law to the grand jury, at the time the Government presented the Superseding Indictment in this case. And ultimately his assertion relies upon nothing more than speculation and a generalized complaint about the possibility of a misstatement law, which itself relies upon on Defendant's misunderstanding of the law, as discussed above. Nor can Defendant demonstrate prejudice.

*Indivior* is instructive. There, the court denied a motion to dismiss which alleged a prosecutor made a misstatement of law to the grand jury, and held that disclosure of the instructions to the grand jury was not appropriate. *Indivior Inc.*, 2019 WL 6039969, at *7-8. The court held that "the defendants' conclusory allegations of government misconduct are insufficient and legally incorrect" and that the defendants had failed to demonstrate a strong showing of particularized need for the transcripts of the grand jury instructions. *Id.* at *8 (citing *United States v. Ahmad*, No. 1:14cr164 JCC, 2014 WL 2766121, at *3 (E.D. Va. June 18, 2014). The same is true here: Defendant makes a conclusory, speculative allegation regarding an invented misstatement of law related to Defendant's potential affirmative defense. He has failed to demonstrate any showing of a particularized need for the grand jury instructions in this matter. Defendant has also failed to establish that any grave misconduct occurred, and that such misconduct "substantially influenced the grand jury's decision to indict" or that "grave doubt that the decision to indict was free from the substantial influence of such violations." Further, Defendant can never establish that he was "actually prejudiced" by the invented "misstatement" of law, because Defendant's understanding of the law in this case is incorrect.

Defendant asserts that perhaps the Government did not tell the grand jury something it was not required to disclose—indeed, an incorrect statement of law—and, in any event his assertion is based on pure speculation. *See, e.g.*, *United States v. Huntress*, 2015 WL 631976, at *27-28 (W.D.N.Y. Feb. 13, 2015) (where defendants charged with obstruction of justice moved to compel production of grand jury legal instructions based on their invocation of a good-faith defense, court denied the motion as a "fishing expedition"). It is hard to imagine a better example of "unsubstantiated, speculative assertions of improprieties," *Ferreboeuf*, 632 F.2d at 835, being advanced in support of a motion for disclosure of grand jury materials than the ones advanced by Defendant here. [8] The Court should deny Defendant's Motion to Dismiss Count 29 (ECF No. 108) in its entirety.

## III. Defendant's Partial Motion To Dismiss Counts 6, 8, 9, 12-14, 16-19, and 21 of The Indictment and Strike Paragraph 27 (ECF No. 119) Should Be Denied.

Defendant also asks the Court to partially dismiss Counts 6, 8, 9, 12-14, 16-19, and 21 of the Indictment or, alternatively, seeks the production of still more Grand Jury materials on the basis that the Government's allegations are "scientifically flawed" and without factual support except "impossible science." ECF No. 119 at 2, 12.

Specifically, Defendant takes issue with allegations in the Indictment that Defendant

---

[8] There appears to have been a noticeable increase in the number of requests filed by defense counsel for disclosure of the government's legal instructions before the grand jury within the past several years, probably owing in large part to the interest generated among defense attorneys by Judge Titus's decision ordering such disclosure in *United States v. Stevens*, 771 F. Supp.2d 556 (D. Md. 2011). The requests for disclosure of grand jury instructions that were (unsuccessfully) filed in *United States v. Huntress*, 2015 WL 631976, at *27-28 (W.D.N.Y. Feb. 13, 2015) and *United States v. Acherman*, 2015 WL 6126811, at *1-*3 (D. Mass. Oct. 16, 2015), for example, both appear to have been prompted by *Stevens*.

In *Stevens*, the court found not only that the prosecutor had erroneously told the grand jury to disregard the defendant's reliance on advice of counsel, but also that the error went to the core of the charge because the defendant directed a team of lawyers and advice of counsel was a natural defense in that case. 771 F. Supp. 2d at 568. In *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991), the court found not only that the prosecutor had erroneously instructed the grand jury about constructive possession, but also that the government witness had presented inaccurate hearsay testimony and "non-relevant, highly prejudicial, and erroneous information about the defendant's background." 763 F. Supp. at 21. Neither of these cases are similar to the facts and circumstances here.

submitted claims for 360 grams of certain compounded medications, but dispensed an amount less than the amount billed—namely approximately 300 grams and milliliters.  Indictment at 7; *id.* at 11 (Count 6 – pain cream), *id.* at 11 (Count 8 – scar cream); *id.* at 11 (Count 9 – pain cream); *id.* at 12 (Count 12 – migraine cream); *id.* at 12 (Count 13 – scar cream); *id.* at 12 (Count 14 – pain cream); *id.* at 13 (Count 16 – migraine cream); *id.* at 13 (Count 17 – pain cream); *id.* at 13 (Count 18 – scar cream); *id.* at 14 (Count 19 – pain cream); *id.* at 14 (Count 21 – migraine cream).

Defendant speculates that "erroneous and false science" was presented to the Grand Jury, thus prejudicing him.  ECF No. 119 at 3.  Defendant speculates that the "sole support" for these allegations were the statements of the pharmacist at Defendant's pharmacy, whose credibility he attacks.  *Id.* at 9-10.  Defendant makes factual arguments about what Defendant's purported facts regarding this issue will be, and Defendant further argues that a defense expert witness, Mr. Joseph, recently conducted an experiment in which he created a compounded substance (that was not made by Blair Pharmacy and which the Government has moved to exclude entirely as wholly irrelevant an unreliable[9]), and Defendant claims that this recent experiment supports his argument that the Grand Jury was presented with "scientifically erroneous" information.  *Id.* at 10.  All of these arguments are meritless, and none provides a basis for the relief Defendant seeks.

A.    **Defendant Has Not Satisfied Any Of The Requirements That Would Warrant The Drastic And Rarely Used Remedy Of Dismissal.**

A district court may dismiss an indictment based on misconduct before a grand jury only where that misconduct: (1) "amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions," *United States v. Williams*, 504 U.S. 36, 47, 112 S.Ct. 1735, 118

---

[9]   *See* ECF No. 126 (Government's Reply In Further Support of Its Motion to Exclude).  Further, as noted above, the Defendant will of course to be free to present any (admissible) factual evidence that he so chooses to introduce at trial.  Likewise, the Government will of course, introduce facts to prove the allegations contained in the Indictment, and the Defendant will be free to challenge those facts at trial, as in the normal course of every jury trial.  This issue is of course, a *factual* issue, not a legal issue.  As is true in every jury trial, in the end, the jury will make, as fact finder, all decisions related to facts in this matter.

L.Ed.2d 352 (1992); and (2) prejudices the defendant by "substantially influenc[ing] the grand jury's decision to indict," or by creating "grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, (1988). Dismissal of an indictment because of defects in grand jury proceedings is "the most drastic remedy, and thus is rarely used." *United States v. Dyman*, 739 F.2d 762, 768 (2d Cir. 1984).

First, just as with his Motion to Dismiss Count 29, Defendant's latest Motion runs counter to the function of a grand jury, which is to decide whether there is probable cause to bring a criminal charge, and not to determine guilt or innocence. Indeed, much of Defendant's filing smacks of jury argument. It also is factually incorrect. Defendant states that the Indictment is "premised on the scientific assertion that 360 *grams* must yield 360 *milliliters*." ECF No. 119 at 6. But nowhere does the Indictment contain such an assertion. Paragraph 27 of the Indictment provides:

> 27. It was further part of the scheme to defraud that, in a continuing course of conduct, from on or about December 1, 2014 and continuing through on or about August 30, 2015, **BLAIR** submitted and caused to be submitted, reimbursement claims to health care benefit programs for a specific amount of compounded medication, namely "360 grams." In actuality, **BLAIR** caused the compound prescriptions related to those reimbursement claims to be filled and dispensed from his pharmacy in an amount less than the amount billed, namely approximately 300 grams and milliliters. **BLAIR** received reimbursement from health care benefit programs related to these invalid, overbilled and under filled compound drugs into his Bank of America Account # 9799 in the approximate amount of $5,776,000.00.

Indictment ¶ 27.

The gravamen of paragraph 27 is simply that Defendant—in connection with his scheme to defraud—billed for a specific amount of a compounded medication (360 grams) and that an amount less than 360 grams was provided to patients. The Counts Defendant takes issue with

reflect likewise, do not make any sort of "scientific assertion," as Defendant puts it, and do not even mention the word milliliter. *See, e.g.*, Indictment at 11 (Count 6 – pain cream) ("(360 grams of a pain cream with 10% Gabapentin and Sterabase base cream), which was dispensed in an amount less than the 360 grams and which did not contain the amount or type of ingredients that were billed to TRICARE") *id.* at 11 (Count 8 – scar cream) ("(360 grams of a scar cream) which was dispensed in an amount less than the 360 grams billed to TRICARE").   Defendant's over-blown rhetoric concerning "impossible science," ECF No. 119 at 12, and "erroneous science," *id.* at 12, ultimately amounts to nothing more than a red herring.

Second, to the extent Defendant contends that certain scientific (or other) evidence should have been presented to the Grand Jury because it is supposedly exculpatory, this contention is simply wrong.  Given the nature of the grand jury's role, the government is not required to present exculpatory information. *See United States v. Williams*, 504 U.S. 36, 52 (1992). Nor is the Government required to present a defendant's affirmative defenses. *See United States v. Gardner*, 860 F.2d 1391, 1395 (7th Cir. 1988). "[I]t is the grand jury's function not 'to enquire … upon what foundation [the charge may be] denied,' or otherwise to try the suspect's defenses, but only to examine 'upon what foundation [the charge] is made' by the prosecutor." *Williams*, 504 U.S. at 51-52 (quoting *Respublica v. Shaffer*, 1 U.S. (1 Dall.) 236, 1 L. Ed. 116 (O.T. Phila. 1788)). Imposing a legal obligation on the prosecutor to present exculpatory evidence in his possession would be incompatible with [the adversarial] system. *Williams*, 504 U.S. at 54; *United States v. Witasick*, 443 F. App'x 838, 843 (4th Cir. 2011).   Indeed, "[a] complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading,'" *Williams*, 504 U.S. at 54—which is precisely the allegation that Defendant levels here.

Third, even assuming for the sake of argument that Defendant is correct (which he is not),

that certain "scientific" evidence should have been provided to the grand jury, but was not, any failure to do so is simply not grounds to dismiss the Indictment.  In *United States v. Mills*, 995 F.2d 480 (4th Cir. 1993), cert. denied, 510 U.S. 904 (1993), the Fourth Circuit explained the applicable legal rule as follows:

> [T]he Supreme Court's holdings under the Fifth Amendment's Indictment Clause teach that courts lack authority to review either the competency or sufficiency of evidence which forms the basis of an indictment and may not quash indictments when the errors which produce them, such as prosecutorial misconduct or violation of a statute, do not affect substantial rights .... The *Costello* holding prohibits courts from reviewing the substance of evidence which produces an indictment, and the *Nova Scotia* ruling prevents dismissal of an indictment tainted by procedural defects which only amount to harmless error.

*Id*. at 487 (internal citations omitted).  *Mills* is instructive.  There, the Fourth Circuit confronted "an odd predicament."  The case concerned a conspiracy to distribute cocaine.  The only evidence the United States provided to the grand jury to show that Mills participated in the conspiracy was the mistaken testimony of a DEA agent, who confused Mills with another person named Brincefield.  As a result, the grand jury never received any evidence regarding Mills.  *Id.* at 487-88.

After he was convicted at trial, *Mills* moved to dismiss the indictment, claiming he was deprived of his Fifth Amendment rights to due process and grand jury indictment because the United States had not provided the grand jury with any evidence regarding him.  The Fourth Circuit disagreed, citing *Costello*, 350 U.S. at 363, for the rules that courts may not "look behind" an indictment and defendants may not challenge an indictment for lack of evidence, and *Bank of Nova Scotia v. United States*, 487 U.S. at 254, for the proposition that courts may not dismiss an indictment absent prejudice to the defendant.[10]  Yet, "looking behind" the Indictment is exactly

---

[10]   Attempting to elude this well-established principle, Defendant states that the Grand Jury was presented with "demonstrably false and misleading testimony."  ECF No. 119 at 7 ("There simply is no other way that the Grand Jury could have returned an indictment on these allegations unless it was incorrectly instructed, and misled to believe, that these measurements [one gram and one millimeter] are one and the same.") (emphasis added).  But this statement amounts to nothing more than sheer speculation—plainly insufficient to warrant the drastic remedy of dismissal he

what Defendant would have the Court do.  The Court has been given no sufficient basis to do so and should decline the invitation.

### B.   Defendant Has Not Satisfied Any Of The Requirements That Would Warrant Disclosure Of Grand Jury Records.

The Court should likewise reject Defendant's request (in the alternative) for Grand Jury materials concerning what he calls the "360 Gram/Milliliter Issue."  ECF No. 119 at 13.

Again, a defendant seeking the production of grand jury records must do more than make general unsubstantiated or speculative allegations of impropriety to prevail under Rule 6(e)(3)(E)(ii). *See United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980).  A bare allegation of misconduct will not suffice: the defendant must demonstrate a particularized need for the grand jury transcripts in order to support the allegation of improper conduct before the grand jury. *United States v. Naegele*, 474 F.Supp.2d 9, 10 (D. D.C. 2007); *United States v. Broyles*, 37 F.3d 1314, 1318 (8th Cir. 1994); *United States v. Warren*, 16 F.3d 247, 253 (8th Cir. 1994); *United States v. Yarborough*, 2007 WL 962926 (W. D. N.Y. 2007) (court may not exercise its limited supervisory authority over grand jury without specific factual allegations and specific credible evidence of misconduct so as to warrant disclosure of nonministerial grand jury records).   Nor will a court review the minutes of grand jury testimony based upon a general claim that the evidence was insufficient to support the indictment.  *United States v. Cuevas*, 1989 WL 28461, at *2 (S.D.N.Y. March 23, 1989).

Defendant's motion must establish that grounds may exist, and that the requested grand jury materials are necessary for a court to evaluate the allegations of abuse. A defendant seeking such materials faces a difficult burden of proof.  *See United States v. Cole*, 755 F.2d 748, 758-59

---

seeks.  Again, a presumption of regularity attaches to grand jury proceedings. *See United States v. Capozzi*, 486 F3d 711, 726-27 (1st Cir. 2007) (defense moved for grand jury transcripts to prove that government failed to make adequate showing of interstate commerce; presumption of regularity attaches to grand jury proceedings and courts will not look behind indictment to examine adequacy of evidence; thus district court properly denied motion seeking "proof" of nonjusticiable issue).

(11th Cir. 1985); *United States v. Provenzano*, 688 F.2d 194, 201 (3d Cir. 1982); *United States v. Williams*, 644 F.2d 950, 952 (2d Cir. 1981); *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980).

Here, Defendant has not made any showing of "particularized need" that would justify disclosure. Instead, Defendant essentially asks the Court to engage in a fishing expedition to see if the grand jury proceedings were defective. However, "[t]he unsupported assertion that the evidence reviewed by the grand jury was insufficient as a basis for returning the Indictment against the defendant does not suffice." *United States v. Pena*, No. S1 95 Cr. 130 (AGS), 1995 WL 580329, at *8-9 (S.D.N.Y. Oct. 2, 1995); *see also United States v. Burford*, 755 F. Supp. 607, 614-15 (S.D.N.Y. 1991). Because Defendant advances only general and speculative allegations, his motion to unseal the grand jury proceedings should be denied. *See United States v. Ferrara*, 990 F. Supp. 146, 152 (E.D.N.Y. 1998) (defendant's questions regarding sufficiency of the evidence did not warrant *in camera* inspection of the grand jury minutes); *United States v. Bennett*, No. 97-289 (RWS), 1997 WL 633458, at *2-3 (S.D.N.Y. Oct. 10, 1997) (discrepancy between defendant's version of the facts and the version set forth in the indictment does not justify disclosure of grand jury minutes); *United States v. Sugar*, 606 F. Supp. 1134, 1143 (S.D.N.Y. 1985) ("[defendant] baldly asserts that the evidence was insufficient and [codefendant] speculates that this is so. Such unsupported assertions and speculations are not sufficient to require an in-depth review of the evidence before the Grand Jury, which would delay these proceedings inordinately.").

Alternative, Defendant requests that if the Court declines to award him access to the grand jury materials, it should conduct an *in camera* review of those materials. ECF No. 119 at 14. But given Defendant's failure to articulate a sufficient particularized need for the material, the Court should not have to devote its limited time and resources to such a pointless exercise. It is well established that an *in camera* review should not be granted as a matter of course, but "should be

premised on a showing of some justification to intrude into secrecy of the grand jury process." *United States v. Welch*, 201 F.R.D. 521, 525 (D. Utah 2001.   Although "some courts have recognized *in camera* review may be proper under special circumstances," such a review is not warranted where, as here, "there is no deficiency in the indictment."[11]   *Id.*   "In this case, at this stage, . . . in light of . . . the conclusion previously reached that the indictment is valid on its face, *in camera review* would serve no purpose." *Id.*

The Court should deny all of Defendant's requests for relief as to Grand Jury materials.

## III.   Conclusion

For all of the foregoing reasons, the Government respectfully requests that the Court deny Defendant's Motions (ECF Nos. 108 and 119) in their entirety.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By:      /s/
                Christine Duey
                Paul A. Riley
                Assistant United States Attorneys

---

[11] In the event that the Court makes the determination that there should be a review by the Court, regarding grand jury material in this matter, the Government will certainly make any required documents available for the Court's *in camera, ex parte* review.