## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| **V.** | * |
| | *   **CRIM. NO. 19-00410-ELH** |
| **MATTHEW E. BLAIR,** | * |
| | * |
| **DEFENDANT** | * |
| | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

## DEFENDANT'S OMNIBUS MOTION IN LIMINE

Defendant Matthew E. Blair ("Mr. Blair"), by and through undersigned counsel and in accordance with this Court's September 22, 2021 Order (ECF No. 155), files this Omnibus Motion in Limine to exclude any and all exhibits, questions, references, comments, testimony, and arguments in the presence of the jury concerning the following subjects, which are inadmissible under Federal Rules of Evidence 401, 402, and 403 and which would unfairly prejudice Mr. Blair if permitted.

## INTRODUCTION

In this case, the Government has charged Mr. Blair with twenty-one counts of wire fraud, seven counts of aggravated identify theft, five counts of anti-kickback violations, and three counts of money laundering, for allegedly fraudulently billing for and dispensing compound drug prescriptions and hiring independent sales marketers to market those compounds, as part and parcel of what the Government charges as a "scheme and artifice to defraud insurance companies and health care benefit companies[.]" Superseding Indictment ("Indictment") (ECF No. 20), ¶ 14. Mr. Blair is the former owner of Blair Pharmacy and is not a licensed pharmacist nor a medical doctor.

Throughout the course of this case and in discovery, the Government has produced documents and made representations regarding the evidence it intends to offer at trial, some of which Mr. Blair seeks, by way of this Omnibus Motion, to exclude as (a) irrelevant under Federal Rules of Evidence 401 and 402 and/or (b) barred under Federal Rule of Evidence 403. For the reasons discussed below, this Omnibus Motion should be granted in full and the Government (including its witnesses) should be precluded from referencing, introducing testimony, commenting, offering exhibits, and arguing in the presence of the jury concerning the following subjects.

## **MOTION IN LIMINE STANDARD**

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *Tserkis v. Baltimore Cty.*, ELH-19-202, 2021 WL 195310, at *6 (D. Md. Jan. 19, 2021) (slip op.) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd* 469 U.S. 38 (1984)). Motions in limine aim to "streamline a case, because such motions enable a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial." *Id.* (internal quotation marks and citation omitted); *see also  United States v. Verges*, No. 1:13-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014) ("The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider.").

To be admissible, evidence must be relevant. Fed. R. Evid. 401, 402. Relevant evidence is defined as that which has any tendency to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402.

Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. In the context of Rule 403, evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Determining the admissibility of evidence under Rule 403 requires balancing the probative value of and the need for the evidence against the harm likely to result from its admission. *See* Fed. R. Evid. 403. This rule exists to protect a defendant from the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. *Old Chief*, 519 U.S. at 180.

For the reasons explained below, Mr. Blair submits that the following subjects and categories of evidence are irrelevant to any issue at trial and serve no purpose other than to prejudice Mr. Blair, inflame the jury, confuse the issues, and/or waste time. Consequently, they should be excluded, and this motion should be granted.

## SUBJECTS AND CATEGORIES OF EVIDENCE TO BE PRECLUDED

**I.** **PROHIBITION ON THE GOVERNMENT FROM CHARACTERIZING CERTAIN LAWFUL PRACTICES OF BLAIR PHARMACY AS UNLAWFUL, IMPROPER, OR NEFARIOUS.**

Among other things, the Government has alleged that, as part of Mr. Blair's "scheme to defraud," Mr. Blair created and used pre-printed prescription forms and processed prescriptions and reimbursement claims electronically. Based on its pleadings and arguments, it is clear that the Government intends to improperly suggest that  this conduct, none of which – by the Government's own acknowledgment, *see infra* page 6 – is unlawful or improper, is in fact

improper or unlawful in an effort to inflame the jury. But the Government's effort to cast these *legal* (and standard) acts as unlawful, improper, or nefarious mischaracterizes routine practices in the pharmaceutical industry and makes them appear corrupt. Such mischaracterizations are not probative as to whether or not Mr. Blair participated in or directed any criminal activity, and they are highly likely to unfairly prejudice Mr. Blair and inflame and mislead the jury. Accordingly, the Government should be precluded from arguing, referencing, or offering testimony that the following *lawful* practices are somehow evidence of criminal conduct.

### A.     Preprinted Prescription Forms

First, the Court should prohibit the Government from suggesting there is anything unlawful or improper about a pharmacy's – including Blair Pharmacy's – use of pre-printed prescription forms, a copy of which is attached as **Exhibit 1** at 1. On this, the Indictment charges, in pertinent part, that it was "part of the scheme to defraud" that Mr. Blair: (a) "created and modified compounded drug prescription forms," ECF No. 20, ¶ 20; (b) "created and modified lists of chemical ingredients on the prescription forms that he created[,]" *id.*; (c) "created a new compound prescription form, in which he created a 'Metabolic' compounded drug box, which listed the chemical ingredients for his Vitamin Formula #1[,]" *id.*, ¶ 29; and (d) "modified the 'Metabolic' box on his prescription form by removing an ingredient and increasing the amount of another ingredient, thereby creating Vitamin Formula #2 on the prescription form …, [which Mr. Blair then] distributed … to a sales marketer, who was also not a doctor or pharmacist[,]" *id.*, ¶ 33.

At the January 29, 2021 motions hearing, in discussing Mr. Blair's Motion for a Bill of Particulars, it became clear that the Government intends to introduce evidence to suggest that Mr. Blair's creation and distribution of pre-printed prescription forms was somehow improper:

So what Mr. Blair did with respect to creating this form was he decided what ingredients were going to comprise, for instance, Number 5, this scar cream. He wrote them out. He decided the percentages. And, and he gave that to Mr. Alavi. And they talked about trying to get, trying to use Mr. Alavi's influence with his TRICARE contacts to secure as many referrals to Blair Pharmacy as possible.

…

So, you know, prescriptions, it's not outside the norm for prescriptions to be submitted from the doctor's office electronically to pharmacies. What's different here is that there was no other option for an authorized script, a script that is signed by a doctor and approved by a doctor, there was no other option for the patient, for this to go anywhere else other than Blair Pharmacy via the circumstance that he set up.

. . .

But the point is . . . this was not a situation where it was like an advertisement. We're just paying somebody to generally talk about the, the compounds and the great, the great stuff that can happen if you have a topical compound as opposed to taking an ibuprofen. You know, this isn't that situation. These all were directed and specifically funneled to Blair Pharmacy.

Hearing Transcript (ECF No. 85) at 94:1 to 95:22 (Jan. 29, 2021).[1]

The Government also intends to offer the opinions of at least two expert witnesses – Dr. Stephen Thomas and Steven McCall – that pre-printed prescription forms are "outside of industry standards," *e.g.*, ECF No. 106-2 at 2 to 3, and are "indicative or fraudulent billing practices designed to deceive health care benefit programs," *id.* at 7 to 8.[2] Mr. Blair has moved

---

[1] At the September 28, 2021 *Daubert* hearing (the transcript of which is not yet available), the Government made similar arguments and assertions, attempting to cast the pre-printed prescription forms in a nefarious and improper light.

[2] For example, and as this Court is aware from the parties' briefing to exclude expert witnesses, the Government seeks to admit testimony from Dr. Thomas that "it would be outside industry standards for the owner of a pharmacy (or a pharmacy tech) to create pre-filled prescription forms containing the pharmacy owner's conceived creams and chemical combinations[.]" ECF No. 106-2 at 2 to 3.

to exclude this proffered testimony in its entirety. *See, e.g.,* ECF No. 106. Even if the Court grants that request and rules that such expert testimony is inadmissible, Mr. Blair nevertheless requests that the Court take the additional step to grant this motion in limine and prevent the Government from suggesting, through any commentary or evidence, that the mere creation, use, or distribution of pre-printed prescription forms is (or was), in itself, fraudulent, improper, or unlawful.

It is notable that, when recently pressed at the September 28 *Daubert* hearing, the Government could not point to *any* law or regulation that prohibits the use of a pre-printed prescription form.[3] The Government wishes to introduce evidence that the prescription forms, for example, "drive clinical decision making," ECF No. 106-2 at 2, but this ignores the simple fact that the form has no effect until a licensed physician writes a prescription.[4] That physician is legally and professionally bound to use his or her independent professional medical judgment to authorize an appropriate prescription. And, while the prescription form included common compound formulas, physicians of course are not bound by the form and can change it to suit their patient's needs (as the defense will demonstrate at trial actually occurred with prescriptions written on Blair Pharmacy's pre-printed form, *see, e.g.,* Ex. 1).

Yet, the Government intends to suggest to the jury just that – *i.e.,* that a physician who received one of Blair Pharmacy's pre-printed forms would be bound by the formulations printed

---

[3] As noted *supra* note 1, a copy of the September 28 hearing transcript is not yet available.

[4] In addition, choosing to conduct business – including promoting compound formulations – in such a way as to maximize allowable reimbursement is, of course, not improper or illegal. *See, e.g., United States ex rel. Bennet v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 783 (S.D. Tex. 2010) (exploiting legitimate profits does not create reasonable inference that providers knowingly submitted false claims to defraud government). Here, the pre-printed forms included compound ingredients for which TRICARE, not Blair Pharmacy, set the reimbursement rates and which a licensed physician duly independently prescribed to his or her patient.

thereon. This (again) ignores the fact that there is simply *nothing* about a mere form that prevents a prescribing physician from writing a different prescription for a different formulation, or from modifying the formulation that is listed. It also in no way restricts how a patient's prescription can be presented to a pharmacy,[5] a fact the Government acknowledged during the January 29, 2021 motions hearing. *See* ECF No. 85 at 95 (counsel for the Government noting that using the fax number at the top of the form is "not the only way, of course, a marketer can indeed get handwritten scripts by doctors"). The simple fact that Blair Pharmacy used a pre-printed form to market its pharmacy services, a common industry practice, is irrelevant to the charges against Mr. Blair, and for that reason alone, any mischaracterization by the Government should be precluded under Rules 401 and 402.[6]

But even if such evidence was conceivably relevant, it should be excluded under Rule 403 because the danger of unfair prejudice and the risk that it would confuse the issues and inflame and mislead the jury substantially outweigh any minimal probative value. *See* Fed. R. Evid. 403. Indeed, it is likely that allowing the Government to offer this evidence will mislead

---

[5] Importantly, the Government's arguments are misleading in failing to distinguish between a *retail* pharmacy and a *compounding* pharmacy. *See* ECF No. 85 at 94:15-95:5 ("But oftentimes what … a doctor will do these days in a practical setting is they'll ask you, well, what pharmacy would you like this to be sent to? And perhaps if it's your regular doctor, they already know because it's in your system what pharmacy that you prefer. . . .  What's different here is that . . . there was no other option for the patient, for this to go anywhere else other than Blair Pharmacy via the circumstance that he set up."). Compounding pharmacies are far less ubiquitous than retail establishments, and by conflating the two, the Government will create confusion. Regardless, compounded prescriptions cannot be filled by one's "preferred" retail pharmacy. Moreover, the *physician's* failure to ask the patient's preference has no bearing on the propriety of Mr. Blair's creating and distributing the pre-printed prescription form.

[6] It is also worth noting that, in any event, the pre-printed prescription forms used by Blair Pharmacy constitute advertising that is protected by the First Amendment, *see, e.g., Sorrell v. IMS Health Inc*., 564 U.S. 552, 557 (2011) ("Speech in aid of pharmaceutical marketing [] is a form of expression protected by the Free Speech Clause of the First Amendment."); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 769-70 (1976) (invalidating a Virginia law making it "unprofessional conduct" for a pharmacist to advertise its prescription drug prices), and issue that has already been briefed for this Court, *see, e.g.,* ECF No. 39.

and confuse the jury into believing that there was something wrongful about pre-printed prescription forms – standing alone – that would have made *any* prescription written on *any* such form *per se* improper or fraudulent, which is simply inaccurate and untrue. Further, characterizing pre-printed prescription forms in this manner would invite the jury to infer – improperly – that the mere creation and distribution of these prescription forms somehow interfered with or supplanted licensed physicians' independent medical judgment in writing the prescription at issue.

For these reasons, any implication by the Government that creating, distributing, or using a pre-printed prescription form is in any manner inappropriate, nefarious, or unlawful is irrelevant, incorrect, misleading, and prejudicial. Accordingly, the Court should exclude this evidence.

### B.    Electronic System for Receiving & Processing Claims

Relatedly, the Government should be precluded from suggesting that there is anything unlawful or improper about the fact that Mr. Blair used an electronic system for sending and processing prescriptions from physicians to Blair Pharmacy, with or without the assistance of its sales marketers, Atlas Group.[7] While it is not entirely clear from filings (and it is not charged in the Indictment), the Government appears to suggest that Mr. Blair's use of an electronic means –

---

[7] The defense understands that this is distinct from the Government's allegation that Blair Pharmacy submitted claims for reimbursement electronically to the payor (or the pharmacy benefit manager for the payor, such as Express Scripts) using an internet-based service, Digital Rx. *Cf.* ECF No. 20, ¶¶ 22-23. The defense does not currently have reason to believe that the Government intends to argue that the submission of claims by electronic means (as opposed to mailing hard copies, for instance) from *Blair Pharmacy to the payor* was somehow wrongful, particularly in light of the Government's interest in soliciting expert witness testimony regarding the electronic claims submission system used by pharmacies to have claims adjudicated and paid. *See* ECF No. 106-2 at 8. Accordingly, this motion in limine seeks to exclude the Government from suggesting that the use of an electronic system, here eFax, to send prescriptions from *the physicians to Blair Pharmacy* was somehow improper. To the extent the Government does, in fact, intend to argue otherwise, the defense preserves and will raise any objections, as appropriate, at trial.

namely, eFax – to transmit prescriptions to Blair Pharmacy is somehow "different" or "outside the norm" of prescriptions being submitted from a physician's office to a pharmacy. For example, the Government has contended that Mr. Blair "created a process in which prescriptions generated by Atlas were submitted electronically, directly to Defendant's pharmacy," and "[b]ecause of the process of direct, electronic submission of the prescription forms from Atlas to Defendant's pharmacy, many patients were not aware that they had received a prescription for a cream." ECF No. 49 at 26 to 27.[8] In addition, during the January 29 motions hearing, counsel for the Government argued:

> And the way that Mr. Blair set up the process, it's not at all like you would imagine in a normal health-care setting, Your Honor. This is not a situation where a patient goes to a doctor, has some pain, has an issue. They talk to their doctor. The doctor thinks of what might be a prescription that is, you know, relevant to their particular health-care need, writes a prescription. And in the olden days, of course, we used to actually get that piece of paper from the doctor. Sometimes it still happens. And you go to the pharmacy yourself and place the order.
>
> But oftentimes. . . what a doctor will do these days in a practical setting is they'll ask you, well, what pharmacy would you like this to be sent to? And perhaps if it's your regular doctor, they already know because it's in your system what pharmacy that you prefer.
>
> So, you know, prescriptions, it's not outside the norm for prescriptions to be submitted from the doctor's office electronically to pharmacies. What's different here is that there was no other option for an authorized script, a script that is signed

---

[8] This position is inconsistent with statements by Blair Pharmacy's then-Pharmacist-in-Charge (and produced in discovery) that he called patients prior to compounding or dispensing any prescription. It also would appear to ignore the duties and obligations of physicians with respect to informed consent. In addition, it is worth noting that Blair Pharmacy's pre-printed prescription form expressly stated: "By submission of this prescription to the pharmacy, the prescriber represents that he/she has discussed the prescribed medication with the above named patient and the patient has agreed to the shipment of the medication by mail to patient's home address. Unless noted otherwise, patient has agreed to auto-refill prescription." *See* Ex. 1 at 1. This form was also accompanied by a "Patient Information" sheet, *see id.* at 2, which was to be provided to the patient and which acknowledged that the prescription had been discussed by the physician.

> by a doctor and approved by a doctor, there was no other option for the patient, for this to go anywhere else other than Blair Pharmacy via the circumstance that he set up.
>
> If you look at the top, there's a fax number. What that fax number is a system that Mr. Blair set up with a company, I believe it's called eFax. And so what a doctor's office will do with this pre-filled out form is they will fax it to the fax at the top, which goes only to Blair Pharmacy via email. So it's faxed in and it comes to the pharmacy as an email.

ECF No. 85 at 94:22 to 95:11.

Contrary to the Government's representations, *no* Maryland law or regulation prohibits the use of fax or electronic means to deliver a prescription from a prescriber to the pharmacy. In fact, the regulations governing pharmacies in Maryland expressly *permit it*, providing that a "valid prescription shall be … (2) Conveyed: … (b) In a manner that is *transmitted to the pharmacy electronically*, provided that the prescription is: … (ii) Received by the [pharmacy] permit holder's computer, facsimile machine, or other electronic device[.]" COMAR 10.34.20.02(A) (emphasis added). In addition, the Maryland Board of Pharmacy and the Maryland Board of Physicians created a "Prescription Signature Options" chart, which is publicly available online, to inform pharmacists and physicians of the types of signatures and means of transmission that are acceptable in Maryland. *See* **Exhibit 2.** This guidance expressly clarifies that prescriptions bearing handwritten signatures may be faxed (or scanned) to the pharmacy. *See id.*

Accordingly, the Government should not be permitted to suggest, as the defense understands it intends to do, that use of electronic submission of prescriptions to or from Blair Pharmacy (or any pharmacy) is, on its face, evidence of unlawful or fraudulent activity or intent. There simply is no legitimate purpose for offering this evidence. First, it has no bearing on whether Mr. Blair engaged in or directed the scheme to defraud with which he is charged, and

therefore, it is irrelevant and inadmissible under Rules 401 and 402. Second, such evidence is misleading, will confuse the jury, and undoubtedly prejudices Mr. Blair. Indeed, it will suggest to the jury that any otherwise valid prescription transmitted to Blair Pharmacy by eFax was somehow rendered fraudulent or improper solely due to the means of its transmission. That is wholly inaccurate and a complete misrepresentation. In addition, this evidence is likely to mislead and confuse the jury into believing that sending a prescription by fax or electronic means somehow deprives patients of information about their prescriptions or interferes with their abilities to choose their providers (or that Mr. Blair, rather than the prescribing physician, would be to blame) – neither of which is true. On balance, these dangers – prejudice, confusion, misleading – substantially outweigh any minimal probative value of the evidence, rendering it inadmissible under Rule 403.

For all these reasons, the Court should exclude this evidence.

## II. PROHIBITION ON THE GOVERNMENT FROM COMMENTING ON REIMBURSEMENT AMOUNTS RECEIVED BY BLAIR PHARMACY.

This Court should exclude any evidence at trial of the reimbursement amount for any prescription, other than those substantively charged in the Indictment as lacking authorization by a doctor,[9] as the reimbursement amounts are probative of nothing and are highly inflammatory and prejudicial to Mr. Blair.

At bottom, this case involves alleged fraud in connection with *only a handful* of prescriptions dispensed by Blair Pharmacy. *See* ECF No. 20, Counts 1-21. It follows, then, that reimbursement amounts for prescriptions *other than those substantively charged* in the Indictment should be inadmissible, because the reimbursement amount for a *different, uncharged* prescription is simply not relevant. Moreover, in many of the substantive counts at issue, the

---

[9] This would exclude Counts 1 to 5, 7, 10, 11, 15, and 20. *See infra* note 12.

Government does not allege that the *entirety* of the prescription was fraudulent. Specifically, in Counts 6, 8, 9, 12 to 14, 16 to 19, and 21, the Government has alleged that the compounded medications were only *partially* fraudulent, for instance, by being dispensed in a lesser volume than billed for or being dispensed with ingredient amounts that were not as advertised. *Id.* at pp. 10-14.[10] Therefore, there simply is nothing that would make the *entirety* of the reimbursement amount relevant; this evidence should not be admissible.

In fact, this point has already been recognized by the Government in its concession to strike from the Indictment the *total loss amounts* associated with the fraudulent conduct at issue. *See* ECF No. 156 at p. 56. Upon the defense's argument that these loss amounts (totaling approximately $10 million) were irrelevant to the actual charges and grossly prejudicial, the Government agreed to strike those portions of the Indictment that allegedly "related to these invalid, misbranded and overfilled" compound drugs prescriptions. *See id.* This motion simply extends a principle the Government has already agreed to.

Even if minimally relevant, however, the reimbursement amounts are highly prejudicial because they create a risk that the jury may determine Mr. Blair's guilt based on the amount of money Blair Pharmacy received, rather than based on proof beyond a reasonable doubt of the crimes charged. This is precisely the type of prejudicial evidence that must be excluded. *See Old Chief*, 519 U.S. at 180 (unfair prejudice is the "capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged"); *see also, e.g., Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, Civ. No. 04-10014, 2009 WL 3111766, at *6-7 (S.D.N.Y. Sept. 28, 2009) (excluding "actual dollar figure" of

---

[10] For instance, those prescriptions are not alleged to be entirely false or fraudulent because it is not alleged that the lesser volumes allegedly dispensed or the alternative ingredients allegedly included would not have been covered and reimbursed so long as they were authorized by a valid prescription and the reimbursement claim was accurate.

compensation for "its potential to bias the jury under Rule 403"); *accord United State v. Ahmed*, Case No. 1:14-cr-227 (E.D.N.Y) (ECF No. 133, Order dated June 24, 2016) (in health care fraud case, permitting evidence of the number of reimbursement claims submitted to Medicare but excluding the amount Medicare reimbursed the defendant and other providers); *see also* Fed. R. Evid. 403, Advisory Committee's Note (prejudicial evidence is that which invites the jury to decide the case on an "emotional" basis). This is particularly appropriate where, as here, loss amounts are not essential elements of the offense (wire fraud)[11] or pertinent to the lodged charges. *See, e.g., United States v. Rush*, 807 F. Supp. 1263, 1265-66 (E.D. La. 1992) (finding that inclusion of loss amount in indictment – where the amount was not an element of the crime with which the defendant was charged – was prejudicial and inflammatory); *United States v. Najor*, No. 13-20462, 2014 WL 2608067, at *4-6 (E.D. Mich. June 11, 2014) (same).

Further, the prejudice this type of evidence would cause to Mr. Blair is particularly stark here in light of the fact that neither Mr. Blair nor Blair Pharmacy (or any pharmacy) had any control over the costs (reimbursement amounts) of the compounds prescribed by physicians and subsequently dispensed by Blair Pharmacy. Allowing the Government to introduce testimony or other evidence of the reimbursement amounts would suggest otherwise to the jury to the prejudice of Mr. Blair.

In short, the full reimbursement amount for these prescriptions is simply not relevant and would unfairly prejudice Mr. Blair. Therefore, the Court should prohibit this evidence.[12]

---

[11] The elements of wire fraud under 18 U.S.C. § 1343 are: "1) a scheme to defraud and 2) the use of a wire communication in furtherance of that scheme." *United States v. Bollin*, 264 F.3d 391, 407 (4th Cir. 2001).

[12] For the remaining substantive counts that allege the entire prescription was fraudulent (*e.g.*, those that allege the prescription was not authorized by a doctor), Mr. Blair recognizes that the full amount of the reimbursements may be admissible and thus, he does not seek to exclude the reimbursement amounts for

### III.   PROHIBITION ON THE GOVERNMENT FROM COMMENTING ON MEDICAL NECESSITY.

This Court should exclude any references to "medical necessity" as it relates to the compounds or prescriptions at issue in this case.

This case, again, involves alleged fraud in connection with *only a handful* of prescriptions. *See* ECF No. 20 at pp. 10-14 (Counts 1-21). Despite the Government's apparent intentions and sweeping statements as to the scope of the supposed fraudulent scheme, this is *not* a case about the *entirety of prescriptions* dispensed by Blair Pharmacy being fraudulent, nor is it a case about prescriptions being fraudulent because – despite the existence of physician-approved prescriptions – they were purportedly "medically unnecessary." Though Mr. Blair acknowledges that *general* (and few) allegations concerning medical necessity are listed in the "Manner and Means" section of the Indictment, *see*, *e.g.*, *id.*, ¶¶ 15, 24[13], there is **no** substantive charge alleging that the *thousands* of other prescriptions received and filled by Blair Pharmacy were medically unnecessary. Thus, to the extent the Government now seeks to paint the thousands of *uncharged* (and valid) prescriptions dispensed by Blair Pharmacy as "medically unnecessary," it should be disallowed under Rule 401 as being not relevant to the charged counts and prohibited by Rule 403 as being wildly prejudicial.[14]

The Government's characterization is particularly fraught in a case involving anti-kickback violations (such as this) because the "usual" scenario in this area involves a physician

---

Counts 1 to 5, 7, 10, 11, 15, and 20 by way of this motion in limine. Mr. Blair preserves, however, all arguments and objections with respect to these counts at trial.

[13] The Indictment contains three total references to "medical necessity," all in the general "manner and means" allegations and **all** involving prescriptions that were allegedly "not authorized" by a physician.

[14] Of course, the Government should be required to first establish that "medical necessity" was even a requirement for coverage at the relevant time frame before being permitted to present any of this evidence.

who is influenced by kickbacks to provide medically unnecessary prescriptions. Here, by contrast, there is no allegation of (1) any physician receiving kickbacks or (2) any physician writing medically unnecessary prescriptions. The very few places where medical necessity is mentioned in the Indictment are instances in which it is charged that the physician *did not authorize the prescription at all* – a materially different circumstance and one that makes the Government's broadly sweeping arguments on "medical necessity" misleading, confusing, and prejudicial by their very nature. Further, this type of evidence may encourage the jury to convict Mr. Blair of the charged counts despite the fact that medical necessity is *not* the theory of the alleged fraud (in other words, irrespective of the other fraud theories in the Indictment, such as underfilling). *See Old Chief*, 519 U.S. at 180 (unfair prejudice is the "capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged").

For these reasons, the Court should exercise its broad discretion to exclude evidence of medical necessity for uncharged prescriptions under Rules 401, 402, and 403.[15]

---

[15] Despite a few references to medical necessity in the context of charging that a physician did not actually authorize a prescription, as noted above, the Government's expansive "medical necessity" theory is not charged in this case, making it textbook Rule 404(b) "other acts" evidence. Any reference to the lack of medical necessity of *other uncharged prescriptions* will be improper character evidence and inadmissible under Rule 404, which provides that character evidence, including evidence of prior wrongs or acts, is not admissible to prove that a person acted in accordance with that character on the occasion in question. Fed. R. Evid. 404. As a threshold matter, Rule 404(b) requires that, upon request of a criminal defendant, the prosecution must provide reasonable notice of the general nature of the Rule 404(b) evidence unless excused for good cause. At this time, the Government has not filed a notice seeking to introduce this evidence under Rule 404(b), and therefore this evidence has not gone through a Rule 404(b) analysis, which also requires consideration of, and potential exclusion under, Rules 401 and 403. Unless and until the Government files such a notice and identifies the basis under Rule 404(b) for which it intends to present this evidence, Mr. Blair cannot, and need not, respond to any such argument. With this in mind, Mr. Blair acknowledges that the deadline to file Rule 404(b) notices and motions is October 8, 2021.

## IV.   PROHIBITION ON THE GOVERNMENT FROM COMMENTING ON MR. BLAIR'S PERSONAL EXPENDITURES.

The Court also should exclude any evidence of Mr. Blair's wealth, personal finances, or personal expenditures, except where proof of payment is an essential element of the charge (here, the money laundering counts only). To the extent the Government intends to offer any such evidence, not only does it simply have no relevance to Mr. Blair's guilt or innocence as to most of the crimes charged, it is highly prejudicial and serves no purpose other than to inflame the jury and elicit emotional appeals. Accordingly, it should be excluded under Rules 401, 402, and 403.

Other than the money laundering charges, the wire fraud, aggravated identity theft, and anti-kickback charges do not require as an element proof that Mr. Blair personally *gained* from the alleged "scheme to defraud," nor proof of how Mr. Blair made use of any of the purported "benefits." *See, e.g., United States v. Welch*, 327 F.3d 1081, 1106 (10th Cir. 2003) ("No appellate court to our knowledge has ever held an intent to achieve personal gain is an element of a traditional mail or wire fraud charge"); *United States v. Stockheimer*, 157 F.3d 1082, 1087-88 (7th Cir. 1998) ("An intent to defraud does not turn on personal gain … all that matters is that [the defendant] intended to inflict a loss."); *United States v. Lewis*, 262 F. Supp. 3d 365, 369 (E.D. Va. 2017) (noting that aggravated identity theft requires proof that "the defendant (1) knowingly transferred, possessed, or used, (2) without lawful authority, (3) a means of identification of another person, (4) during and in relation to a predicate felony offense"); *United States v. St. Junius*, 739 F.3d 193, 210 n.18 (5th Cir. 2013) (violation of federal Anti-Kickback Statute requires proof that "(1) the defendant solicited … any remuneration, including any kickback or bribe … to any person; (2) that the remuneration was solicited … to induce such person to refer an individual to a person for furnishing or arranging of an item or service; (3) that the item or service was one for which payment may be made in whole or in part under a federal

healthcare program; and (4) that the defendant acted knowingly and willfully"); *see also United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010) (surveying cases and explaining that, when the relevant question is not how a defendant "acquired the money he used to fund his extravagant lifestyle," but whether the underlying conduct is legal, how the defendant spent money is irrelevant). Indeed, the Government has essentially already conceded, in relation to the loss amounts since stricken from the Indictment, that the amount of money Mr. Blair earned and how he chose to spend that money have no bearing on his guilt or innocence and should be excluded except where proof of a payment is an essential element of the offense charged. *See supra* page 12. Accordingly, evidence relating to Mr. Blair's wealth, economic condition, or financial decisions is wholly irrelevant to Counts 1 to 33 of the Indictment, and thus should be excluded under Rules 401 and 402.

Aside from relevancy, this evidence also is inadmissible under Rule 403. Courts have consistently recognized, for decades, that reference to a party's wealth, financial decisions, or economic condition is improper and prejudicial, and admission of such evidence constitutes reversible error. *See e.g., United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239-40 (1940) (noting that use of a defendant's purported wealth or spending habits is a "highly improper" appeal to "class prejudice," which "may so poison the minds of jurors" such that an accused "may be deprived of a fair trial"); *United States v. Quattrone*, 441 F. 3d 153, 187 (2d Cir. 2006) ("evidence of compensation, wealth, or lack thereof, can unduly prejudice jury deliberations..."); *United States v. Cassese*, 290 F. Supp. 2d 443, 457 (S.D.N.Y. 2003) (granting new trial due to highly inflammatory nature of wealth evidence), *aff'd on other grounds*, 428 F.3d 92 (2d Cir. 2005); *Hatfield*, 685 F. Supp. 2d at 326 (excluding wealth evidence in case involving alleged improper stock trading); *United States v. Mitchell*, 172 F.3d 1104, 1108-09 (9th Cir. 1999)

(recognizing the "great deal of unfair prejudice" that flows from wealth-based evidence); *Sizemore v. Fletcher*, 921 F.2d 667, 60-71 (6th Cir. 1990) (appeal to class bias is error; defendant not charged with being wealthy); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-1231 (RCL), 2007 WL 842077, at *2 (D.D.C. Mar. 16, 2007) ("The Court is hard pressed to imagine how such evidence [of financial condition or wealth] could be relevant, or how any relevance could help but be substantially outweighed by the undue prejudice and confusion likely to ensue from a discussion of defendants' wealth."). As illustrated by these cases, evidence bearing on Mr. Blair's wealth, economic condition, or personal expenditures is precisely the appeal to class prejudice against which the Supreme Court and numerous other courts have cautioned. Accordingly, it should not be permitted at trial in this matter.

## V.   PROHIBITION ON THE GOVERNMENT FROM REFERENCING THAT FDA APPROVAL WAS NECESSARY, APPROPRIATE, OR NOT OBTAINED FOR THE COMPOUND DRUGS AT ISSUE.

Mr. Blair anticipates that the Government will attempt to suggest and introduce testimony that the compounds at issue in this case were not approved by the Food and Drug Administration ("FDA"). *See, e.g.,* ECF No. 115 at 9, 11 (reciting proposed testimony of Dr. Thomas as it relates to FDA approval of compounds).[16] Any such reference to the FDA approval process – generally or specifically with respect to the compounds at issue in this case – should be precluded as irrelevant and likely to mislead and confuse the jury, prejudice Mr. Blair, and waste time.

First and most significantly, FDA regulations expressly provide that compound drugs are *not governed* or regulated by the FDA, and therefore *are not subject to the FDA's drug approval process*. *See* 21 U.S.C. § 353a(a) (stating that FDA drug approval process "shall not apply to a

---

[16] Mr. Blair has moved to exclude Dr. Thomas in his entirety. *See, e.g.,* ECF No. 106.

drug product if the drug product is compounded for an identified individual patient….”). Here, as this Court is keenly aware, the Government's charges, allegations, and theories exclusively concern Mr. Blair's and Blair Pharmacy's conduct with respect to compounding. Thus, it is difficult to imagine how a process that *expressly does not apply to compounding* could conceivably pertain to *any* fact in this case, let alone one that is "of consequence." Fed. R. Evid. 401.

Second, even if any such evidence were otherwise admissible and somehow conceivably relevant, it would serve only to confuse the issues, mislead the jury, and waste time, and therefore should be excluded under Rule 403. Indeed, any reference to the FDA approval (or not) of compound drugs not only inaccurately reflects the nature of the offenses charged against Mr. Blair and the facts alleged, it would allow the Government to suggest culpable conduct greater than what is alleged in the Indictment (and greater than what is *actually* unlawful). Further, if the Government or its witnesses are permitted to suggest that FDA approval was required, appropriate, or not obtained for the compound drugs dispensed by Blair Pharmacy, there is a high risk that such reference will overwhelm and distract the jury from the issues and evidence that actually *are* relevant in this case. Any such evidence also will invite the jury to draw false inferences against Mr. Blair – such as that Blair Pharmacy dispensed off-label, unsafe, or potentially harmful drugs to patients, or that it circumvented or failed to follow FDA processes and regulations. As 21 U.S.C. § 353a(a) makes abundantly clear, nothing is further from the truth, and the jury should not be misled into believing otherwise here.

On balance, the danger that any references to the FDA approval process would confuse the issues, mislead the jury, and waste time, *far* outweighs any conceivably probative (limited) value of this evidence. Consequently, any reference to the FDA approval process, including that

the compounds at issue in this case were not FDA approved, should be excluded.

## VI.   PROHIBITION ON THE GOVERNMENT FROM OFFERING PHYSICIAN TESTIMONY AS TO THE CONSIDERATION OF COST IN PRESCRIBING DRUGS.

Lastly, the defense understands that the Government intends to call physicians who (ostensibly) will testify that they would not have prescribed certain compound drugs had they known, at the time of prescribing, the (high) cost of those drugs. *See, e.g.,* ECF No. 49 at 65 ("A number of doctors that prescribed the compounded drugs at issue in this case will testify that had they known the amount that the creams were being reimbursed for, they would not have prescribed the drugs to begin with."); *see also* ECF No. 106-2 at 3 (proposed testimony of Dr. Thomas that "many of the medications prescribed in this case are identical to prescription medications available at *de minimis* cost")[17]. This testimony should be excluded under Rules 401, 402, and 403 as irrelevant and because of its likelihood to mislead, confuse the jury, and necessarily waste time.

Most fundamental to the relevancy analysis is that the knowledge or considerations (of which there are many) of a *physician* at the time he or she makes a prescription decision for a patient simply has *no* bearing on whether Mr. Blair, a *pharmacy owner*, engaged in or directed the criminal conduct charged in the Indictment. In other words – and setting aside the fact that it is not even within a physician's purview to consider the cost of a drug when making a prescription decision, *see, e.g., Ironworkers Loc. Union 68 v. AstraZeneca Pharms., LP,* 634 F.3d 1352, 1363 (11th Cir. 2011) ("To allow recovery based purely on the fact that the prescription was comparatively more expensive than an alternative drug – but otherwise safe and effective – would mean that physicians owe their patients a professional duty to consider a

---

[17] This line of proposed testimony is also the subject of Mr. Blair's pending Amended Motion to Exclude Purported Expert Opinions (ECF No. 106), which seeks to exclude Dr. Thomas in his entirety.

drug's price when making a prescription decision. No such duty exists.") – whether a *pharmacy owner* (Mr. Blair) is guilty of the conduct the Government has charged does not depend in any way on the knowledge or state of mind of a prescribing *physician*, the duties, obligations, or considerations of a prescribing *physician*, or the *physician's* exercise of his or her independent medical judgment in prescribing medications for patients. Additionally, neither pharmacy owners like Mr. Blair (nor physicians) have any control over the costs of prescriptions, which are set by TRICARE and private insurers, further highlighting that this evidence is wholly irrelevant and has no place at this trial.

Rather than being probative of an element of any of the criminal statutes alleged to have been violated by Mr. Blair, testimony from physicians (or other evidence offered by the Government) regarding cost considerations for the compound drugs dispensed and billed for by Blair Pharmacy is the height of prejudicial and misleading evidence that will undoubtedly confuse the jury. First, it is prejudicial to allow the Government to utilize *TRICARE's* and *private health insurers'* high pricing for ingredients in compounded prescriptions – something *entirely out of Mr. Blair's control* – as probative, or even suggestive, of Mr. Blair's intent or alleged scheme to defraud. Second, it will insinuate – inappropriately – to the jury that Mr. Blair intentionally overpriced the compounds in order to further the alleged scheme to defraud. Third, it may mislead the jury into considering and weighing what *physicians* did (or did not) do, should (or should not) have done, or did (or did not) consider, which is *not* an issue for the jury to decide; the relevant inquiry is what *Mr. Blair* did.

For these reasons, because the danger of unfair prejudice and jury confusion substantially outweigh any probative value, the Court should exclude any evidence concerning a physician's consideration of the cost of drugs in his or her prescription decision.

## CONCLUSION

For the reasons set forth above, Defendant Matthew E. Blair respectfully requests that this Court grant this Omnibus Motion in Limine in full. A proposed Order is attached.

Respectfully submitted,

/s/

BY: _____

Ty Kelly Cronin (Bar No. 27166)
Alison C. Schurick (Bar No. 19770)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
100 Light St., 19th Floor
Baltimore, Maryland  21202
Telephone:  (410) 862-1049
Facsimile: (410) 547-0699
E-mail:  tykelly@bakerdonelson.com
E-mail: aschurick@bakerdonelson.com

Matthew S. Chester (*pro hac vice*)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana  70170
Telephone:  (504) 566-5200
Facsimile: (504) 636-4000
E-mail:  mchester@bakerdonelson.com

Joseph Murtha (Bar No. 23725)
Murtha, Psoras, Lanasa LLC
Heaver Plaza, Suite 200
1301 York Rd.
Lutherville, Maryland 21093
Telephone: (410) 583-6969
Facsimile: (410) 583-4706
Email: jmurtha@mpllawyers.com

**ATTORNEYS FOR DEFENDANT
MATTHEW E. BLAIR**

### **CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2021, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/

_____

TY KELLY CRONIN