IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO.  ELH-19-410 |
| | * | |
| MATTHEW BLAIR | * | |
| Defendant. | * | |
| | * | |

**********

**GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT INTRINSIC EVIDENCE
AND ALTERNATIVELY NOTICE AND MOTION TO ADMIT EVIDENCE
PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

The United States of America hereby moves *in limine* to admit evidence intrinsic to the charges, or, in the alternative, pursuant to Rule 404(b) of the Federal Rules of Evidence. In addition, this serves as notice of intent to introduce evidence pursuant to Rule 404(b) of the Federal Rules of Evidence.

I. **Background**

Defendant is charged in the Superseding Indictment (the "Indictment") with devising and participating in a scheme and artifice to defraud health care programs and insurance companies, and laundering the funds that he derived from his scheme to defraud. He is charged with twenty-one counts of wire fraud, seven counts of aggravated identity theft, five counts of paying illegal remunerations in violation of the Anti-Kickback statute, and three counts of money laundering.

The Government included a factual summary of the case in the government's consolidated response to Defendant's pre-trial motions. ECF No. 49. The Government respectfully requests that said factual summary be incorporated by reference, for purposes of these motions *in limine*.

II. **Offer of Proof**

1

The Government makes the following offers of proof. Documents supporting the offers of proof have been disclosed to Defendant in discovery.

> **1. Defendant's oral and written communications with Pharmacist A in 2013 and 2014, in the timeframe right before Defendant initiated the opening of Blair Pharmacy in mid-2014.**

Pharmacist A is the owner and operator of Pharmacy A, a compounding pharmacy in a nearby state.[1] In approximately 2012 – 2013, Defendant was working as a compound cream salesman. Defendant contacted Pharmacist A, a person he knew from several years earlier, and Defendant discussed the possibility of sending compound cream prescriptions to Pharmacy A for processing. Pharmacy A agreed to pay Defendant, as a 1099 independent contractor, a commission related to compound cream prescriptions that were successfully processed by Pharmacy A.

During the course of their business relationship, in the 2013 – 2014 time frame, Defendant and Pharmacist A discussed, on numerous occasions, issues related to copayment collection and commission payments. For instance, Defendant suggested to Pharmacist A that he should consider not collecting copayments from patients. Defendant represented that not collecting copays reduced the likelihood of a patient declining a prescription, which thereby increased successful insurance reimbursements and commissions to Defendant.

Defendant became frustrated with Pharmacy A's prescription turnaround time in cases where Pharmacist A insisted that patients be contacted to authorize the prescription before the prescription was sent and the copay was collected. Defendant sent Pharmacist A several emails in late 2013, complaining that business would be lost because competitor pharmacies were waiving copayments, according to Defendant. Defendant also sent written emails to Pharmacist A in mid

---

[1] Pharmacist A was not employed by Blair Pharmacy, nor was Pharmacist A associated with Defendant's pharmacy in Maryland.

to late 2013, proposing to contact the patients himself, so he could control the process of patient notification and copayment collection. Pharmacist A discussed these matters with Defendant and informed him that Pharmacy A was not comfortable waving copayments, and that he would continue his practice of always contacting patients to see whether or not they wanted to receive prescribed compound medications, and collecting copayments from patients.

Defendant also requested that Pharmacist A pay him a commission on all prescriptions successfully reimbursed at Pharmacy A, including for patients insured both by private insurance plans and also by federal health care benefit programs. Pharmacist A informed Defendant that, since he was a 1099 employee and not a W-2 employee, Pharmacist A was not going to pay Defendant commissions on any prescriptions covered by federal insurance plans. Defendant discussed this matter with Pharmacist A on several occasions and sent emails to Pharmacist A in March and April of 2013 regarding the topic of commission payments related to federal health care programs. The written emails included (1) a March 28, 2013 email in which Defendant discussed the AKS as it relates to 1099 independent contractor commission payments and (2) an April 3, 2013 email containing a legal analysis of the AKS as it related to 1099 independent contractor payments that Defendant forwarded to Pharmacist A and asked Pharmacist A to review.

## 2. Additional Acts of Money Laundering Occurring in 2014 – 2015

Although the Indictment specifically describes three counts of money laundering which occurred in mid-2015, Defendant also engaged in additional monetary transactions involving criminally derived property, related to the wire fraud scheme described in the Indictment during the relevant time frame. Defendant transferred criminally derived proceeds that he received from insurance companies and health care benefit programs, related to fraudulent, misbranded and

misfiled compound drugs described in the Indictment, and he used those funds to pay for personal expenditures as follows: (a) From September 2014 throughout the year 2015, Defendant received monetary payments from insurance companies and health care benefit companies into a Bank of America account, and he subsequently transferred those funds, in amounts greater than $10,000, into and between several other Bank of America bank accounts that he owned and controlled; he made these monetary transfers on various and numerous occasions throughout the 2014 – 2015 timeframe;[2] (b) on February 3, 2015, Defendant transferred, via wire, $80,501.00, from a Bank of America account to Park Place Porsche, for the purchase of a Porsche 911 Turbo Cab automobile; (c) on May 21, 2015, Defendant transferred $500,000.00 from a Bank of America account into an investment account with Curian Capital; and (d) on August 14, 2015, Defendant transferred, via wire, $165,000.00 from his Curian Capital investment account to a Fidelity investment account.

## III. Legal Analysis

### a. Intrinsic Evidence

First, the Government asserts that the facts and circumstances outlined above in Section II.1 above are direct evidence related to elements that the Government is required to prove in this case – the Defendant's *mens rea* related to the scheme and artifice to defraud insurance companies and health care benefit programs, and to violate the AKS. The information outlined at Section II, Paragraph # 1 above ("Paragraph # 1") is directly tied to the wire fraud scheme and AKS violations outlined throughout the Indictment, and in particular, Counts 29 – 33 and paragraph 35 of the Indictment. Indeed, the verbal and written statements that Defendant made to Pharmacist A in the

---

[2] The Bank of America accounts, and the corporations associated with the bank accounts, are further described in paragraphs 18 and 19 of the Indictment.

2013 – 2014 time frame, right before he initiated the opening of Blair Pharmacy, is direct evidence of Defendant's criminal intent in this case.

The information contained in Paragraph #1 is also intrinsic evidence to the wire fraud scheme and the AKS violations. Depriving the jury of the information pertaining to Paragraph #1 would deprive the jurors of key and essential facts necessary for them to understand the charges in the Indictment. Simply put, excluding the information would strip the Government's case bare, and would put the wire fraud scheme and AKS violations in a vacuum, without necessary context.

Further, the facts and circumstances described in Section II, Paragraph # 2 above ("Paragraph # 2") above, are also both direct evidence of, and intrinsic to, the money laundering scheme described in Counts 34 – 36 of the Indictment. Indeed, the Government includes reference to the monetary transfers by Defendant, to and through his various Bank of America accounts (as outlined in Paragraph # 2(a)) above, out of an abundance of caution, because these transfers are direct evidence of elements that the Government is required to prove, related to the Money Laundering charges in Counts 34 – 36. As to the information related to Defendant's monetary transactions related to the purchase of a Porsche and Curian Capital / Fidelity investment accounts, the information in Paragraph # 2(b), # 2(c) and # 2(d), this information is intrinsic to the Defendant's monetary transactions alleged Counts 34 – 36, and the transactions occurred during the same, general timeframe in 2015.

The Fourth Circuit has consistently held that "not all prior 'bad act' evidence is encompassed by Rule 404(b)." *United States v. Brizuela*, 962 F.3d 784, 793 (4th Cir. 2020) (quoting *United States v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012)). Instead, the rule is "only applicable when the challenged evidence is extrinsic, that is, separate from or unrelated to the

charged offense." *United States v. Bush*, 944 F.3d 189, 195 (4th Cir. 2019) (internal quotations omitted). Acts that are a part of, or "intrinsic to, the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence." *Id*. at 195–96. (*quoting United States v. Chin*, 83 F.3d 83, 87–88 (4th Cir. 1996)).

The Fourth Circuit has repeatedly held, "[e]vidence of uncharged conduct is not other crimes evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or ... is necessary to complete the story of the crime on trial." *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (internal quotation marks omitted). Such intrinsic evidence is "inextricably intertwined" with evidence of the charged offenses and forms an integral part of the testimony concerning them. *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir.2010) (internal quotation marks omitted).

In order for evidence of uncharged conduct to be admissible to "complete the story" of a charged offense, the evidence must be probative of an integral component of the crime on trial or provide information without which the factfinder would have an incomplete or inaccurate view of other evidence or of the story of the crime itself. *Brizuela*, at 795. That is precisely the type of evidence that is at issue here. In particular, the proffered evidence in Paragraph #1 is highly probative of an integral component of the wire scheme to defraud and the violations of the AKS charged in the indictment. Further, the evidence provides information without which the factfinder would have an incomplete or inaccurate view of other evidence or of the story of the crime itself. Defendant's conduct with Pharmacist A in 2013 and 2014 is clearly connected to his conduct at Blair Pharmacy in 2014 and 2015, as charged in the indictment.

"[W]hen other crimes, wrongs, or acts evidence is relevant to establishing an element of the offense, Rule 404(b) is not even implicated." *United States v. Grimmond*, 137 F.3d 823, 832 (4th Cir. 1998) (internal alterations, quotation marks, and citations omitted); *see United States v. Dozie*, 27 F.3d 95, 97 (4th Cir. 1994) (per curiam) (holding Rule 404(b) did not apply to allegations of insurance fraud that occurred within the same time frame as the charged conspiracy to commit mail fraud). A district court abuses its discretion by limiting the government's evidence "to that which is only directly relevant" to the counts charged in the indictment. *United States v. Bajoghli*, 785 F.3d 957, 963 (4th Cir. 2015). And where, as here, the charged conduct is a scenario "where the defendant's criminal intent is placed at issue" the Fourth Circuit has made it clear case that intrinsic evidence includes conduct beyond the scope of the indictment that is relevant to demonstrating a defendant's knowing and willful conduct. *Bajoghli*, 785 F.3d at 963; *see United States v. Pless*, 79 F.3d 1217, 1220 (D.C. Cir. 1996).

Here, regarding Paragraph #1, Defendant has already placed his criminal intent as a central issue to be decided by the jury in this case. During the September 28, 2021 *Daubert* hearing in this matter, counsel for Defendant made assertions on the record that Defendant will purportedly testify at trial, and that he will testify that he was mistaken and/or confused about the law regarding requirements to collect copayments from beneficiaries, and about whether commission payments could properly be paid to 1099 independent contractors, based upon referrals involving Federal health care programs. During the discussion related to Defendant's purported testimony, counsel for the Defendant characterized these legal requirements as complex, confusing and "clear as mud."

This type of defense is an attack on the "knowing and willful" element of the AKS, and clearly puts Defendant's knowledge and willfulness – his criminal intent – directly at issue in this case. Considering this likely defense, information related to Defendant's knowledge of the law in 2013 and early 2014 – right before he took steps to open his own pharmacy – is direct evidence of elements the Government is required to prove in this case. In 2013, Defendant had numerous verbal and written exchanges with Pharmacist A, in which he attempted to convince Pharmacist A to waive beneficiary co-payments related to compound cream prescriptions that Defendant steered toward Pharmacist A's pharmacy. This evidence is highly probative of Defendant's criminal intent regarding the conduct the Government has alleged that Defendant engaged in at his pharmacy shortly thereafter, in mid-2014 and 2015. The fact that Pharmacist A responded to Defendant's attempts to waive copayments by informing him that co-payment collection was required and that his pharmacy would not engage in the practice of waiving beneficiary co-payments is clearly relevant to Defendant's knowledge regarding the AKS requirements. This evidence also provides necessary context to the jury regarding Defendant's purpose in opening his own pharmacy in 2014, where he could control the practice of waiving beneficiary copayments.

The evidence outlined above in Paragraph #1, is inextricably intertwined with the offense charged, and is necessary to complete the story of the crimes at issue. The Government's evidence must include the ability to tell the story of the crime. The fact that Defendant's interactions with Pharmacist A occurred in 2013 and early 2014, a year to 18 months before the conduct alleged in the Indictment, does not make the evidence any less direct, or inextricably intertwined with the charged misconduct in this case. Fourth Circuit case law makes clear that intrinsic evidence includes conduct beyond the scope of the Indictment that is relevant to demonstrate a defendant's

8

knowing and willful conduct. *See Bajoghli*, 785 F.3d at 963. The information outlined in Paragraph #1 is necessary to provide the jury with context for the conduct that occurred at Defendant's pharmacy. *See United States v. Siegel*, 536 F.3d 306, 316–17 (4th Cir. 2008) (evidence of other crimes properly admitted as intrinsic to provide important context for the government's charge); *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir.2007) (explaining that evidence of bad acts that "provide[s] context relevant to the criminal charges" is admissible without consideration of the requirements of Rule 404); *United States v. Lipford*, 203 F.3d 259, 268 (4th Cir. 2000) (evidence of other criminal acts admissible without regard to Rule 404(b) where the evidence "served to complete the story" of the charged crimes).

To bar the introduction of the evidence proffered at Paragraph #1 would deprive the jury of context related to Defendant's conduct at his pharmacy, as alleged in paragraph 35 and Counts 29 – 33 of the indictment. Although Defendant's communications with Pharmacist A regarding commission payments and copayment waivers occurred before Defendant opened his pharmacy, the evidence is "necessary to complete the story of the crime on trial." *Siegel*, 356 F.3d at 316.

Further, the information in Paragraph #2 is also intrinsic because it "arose out of the same series of transactions of the charged offense" and is "necessary to complete the story of the crime on trial." *Siegel*, 356 F.3d at 316. Indeed, the monetary transactions described in Paragraph #2(b) – (d) occurred in February, May and August of 2015, and the monetary transactions described in Counts 34 – 36 of the Indictment occurred in April, June and September of 2015. And Defendant's internal transfers between his Bank of America accounts occurred throughout September 2014 – 2015, and is directly relevant to the Charges in Counts 34 – 36.

9

Regarding the application of Rule 403, evidence found to be relevant and probative as intrinsic to the crime charged should be excluded under only in those instances where the trial judge believes there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk substantially outweighs the probative value of the proffered evidence. *Morgan v. Foretich*, 846 F.2d 941, 945 (4th Cir. 1988).

It is also clear under Fourth Circuit case law that the admission of evidence does not result in unfair prejudice under Fed. R. Evid. 403 where it does not involve conduct any more sensational or disturbing than the crimes with which the defendant was charged. *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995); *see also United State v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992); *United States v. Roldan Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). Here, Defendant's effort to convince Pharmacist A to waive beneficiary copayments, and Pharmacist A's refusal to do so is certainly relevant and is no more sensational or disturbing than the allegations contained in the Indictment. The evidence is intrinsic and should be admitted.

### b. Rule 404(b)

Alternatively, in the event that the Court determines that the information proffered in Paragraph #1 and Paragraph #2 is not intrinsic, then the Government respectfully moves for the admission of the evidence pursuant to Fed. R. Evid. 404(b)(2). That Rule provides:

> Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(2).

Fed. R. Evid. 404(b) permits the admission of extrinsic acts where they are (1) relevant to an issue other than character, (2) necessary, and (3) reliable. *United States v. Mark*, 943 F.2d 444,

10

447 (4th Cir. 1991) (quoting *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988)); *United States v. Queen*, 132 F.3d 991 (1997); *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir. 1982).

The Fourth Circuit has long held that Fed. R. Evid. 404(b) is an inclusionary rule which permits the admission of all evidence of other crimes relevant to an issue in a trial, except that which tends to prove only criminal disposition. *United States v. Sanchez*, 118 F.3d 192, 195 (4th Cir. 1997); *United States v. McMillon*, 14 F.3d 948, 953 (4th Cir. 1994); *United States v. Bailey*, 990 F.2d 119, 121 (4th Cir. 1992); *Mark*, 943 F.2d at 447; *United States v. Watford*, 894 F.2d 665, 671 (4th Cir. 1990); *United States v. Masters*, 622 F.2d 83, 85 & n.2 (4th Cir. 1980). The trial court has broad discretion with respect to the admission of extrinsic act evidence, and the Court of Appeals will defer to the lower court's decision "unless it is an arbitrary or irrational exercise of discretion." *United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir. 1986). Once the threshold requirements of Fed. R. Evid. 404(b) are met, the court must then consider whether the probative value of the evidence is outweighed by the potential for unfair prejudice under Fed. R. Evid. 403. *Mark*, 943 F.2d at 448; *Masters*, 622 F.2d at 87.

### i. The Evidence is Relevant.

Here, the proffered evidence meets all three parts of the Fourth Circuit's test for admissibility under Fed. R. Evid. 404(b). "To be relevant, evidence need only to have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir.1996) (internal quotation marks omitted). The evidence outlined in Paragraph #1 and Paragraph #2 is relevant, because it is highly probative to prove Defendant's

11

knowledge, intent, plan, motive and identity, as well as to prove his absence of mistake, or lack of accident.

Generally, a defendant's not guilty plea puts intent at issue. *See generally Sparks v. Gilley Trucking Co., Inc.*, 992 F.2d 50, 52 (4th Cir. 1993) (stating that when intent to a crime is at issue, this court regularly permits admission of prior acts to prove that element)." The evidence in Paragraph #1 is even more critical in this case, because given the requirement to prove a heightened *mens rea* in this case, evidence related to Defendant's prior knowledge, intent, motive, identity and lack of mistake or accident are very likely to be highly probative of central issues in this case. As described above, at the September 28, 2021 hearing, counsel for Defendant made assertions that Defendant will purportedly testify that he was mistaken and/or confused about the law, which defense counsel has characterized as confusing and "clear as mud." This type of defense puts Defendant's knowledge and intent directly at issue in this case. Defendant's 2013 and 2014 communications with Pharmacist A about waiving copayments and commission payments to 1099 independent contractors bears directly on Defendant's knowledge, motive, intent, and lack of mistake or accident related to his waiver of copayments and commission payments to 1099 independent contractors at Blair Pharmacy a year later.

Paragraph #1 also evinces a *modus operandi* involving a scheme and artifice to defraud health care benefit programs and to violate the AKS. At the September 28, 2021 hearing, defense counsel made assertions that one of the intended purposes for Defendant seeking to admit expert testimony from pharmacist Mr. Joseph was to explain to the jury that business owners rely on their employees to conduct business properly. It can be reasonably inferred from these defense assertions that, at trial, Defendant will seek to absolve himself and place the blame regarding the

alleged misconduct on others – namely a pharmacist who worked for Defendant at the pharmacy. Considering this likely defense, the fact that Defendant attempted to convince Pharmacist A to waive beneficiary co-payments related to compound cream prescriptions that Defendant steered toward Pharmacist A's pharmacy in the 2013 time period—the time period directly before Defendant took steps to open his own pharmacy in mid-2014—is highly probative and relevant to establish the Defendant's motive, plan intent, knowledge and *modus operandi*.  Indeed, it is identity evidence:   The things that Defendant urged Pharmacist A to do in 2013 are strikingly similar to the conduct that Defendant himself engaged in at his pharmacy—copayment waivers and commission payments to marketers based on the value and volume of federal health care program business.  Such evidence tends to directly rebut Defendant's likely defense that someone else engaged in the criminal conduct in the Indictment, because the conduct is so similar.  And, the fact that, in 2013, Pharmacist A informed Defendant that co-payment collection was required and that he would not engage in the practice of waiving beneficiary co-payments at his pharmacy is clearly relevant to Defendant's knowledge in 2014.  It provides very relevant information related to Defendant's plan and motivation to start his own pharmacy where he could control the practice of waiving beneficiary copayments. This information helps to rebut any possible defense that the Defendant would not have been motivated to waive beneficiary co-payments, that he was not knowledgeable about the requirement to collect copayments from beneficiaries or the possible defense that, as a business owner, he relied on his employee to conduct the business of the pharmacy and did not engage in such conduct himself.

    ii. **The Evidence is Necessary**

The evidence proffered in Paragraph #1 and Paragraph #2 also meets the Fourth Circuit's test for necessity. "The act must be necessary in the sense that it is probative of an essential claim or an element of the offense." *Queen*, 132 F.3d at 997. The Fourth Circuit's language in *Queen*, along with its subsequent decisions applying Rule 404(b), therefore make it clear that in this context, "necessary" does not have the dictionary meaning of "indispensable" or "absolutely required," but rather means that the evidence has persuasive force in establishing a factual point that is material to the jury's decision on a civil claim or criminal offense. The Fourth Circuit has recognized that testimony which supplies useful proof of the elements of knowledge and intent is "reasonably necessary." *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir. 1982); *United States v. Mark*, 943 F.2d 444, 448 (1991).

In *Hadaway*, a case involving a prosecution for aiding and abetting a theft from an interstate shipment of television sets, the Court found that where there were alternative potentially innocent explanations for several of the defendant's apparently incriminating actions during the time period of the crime, it was appropriate to introduce evidence that the defendant assisted with three other instances of theft from an interstate shipment over the course of the subsequent 18 months. *Hadaway*, 681 F.2d at 217-18. In *Hadaway*, the properly admitted extrinsic evidence occurred in the 18 months subsequent to the charged offenses; likewise, the proffered evidence in Paragraph #1 occurred in the 12 – 18 months before the conduct alleged in the Indictment.

Here, a central issue in this case is whether Defendant knew of, planned, and intended to participate in a scheme to defraud health care benefit programs and violate the AKS. Evidence that sheds light on whether the Defendant knew about the requirements to collect copayments and prohibitions related to commission-based payments to marketers for federal business—and his

14

motives for engaging in copayment waivers—is clearly probative of essential factual issues that must be decided by the jury. The proffered evidence at Paragraph #1 and Paragraph #2 serves to prove many of the permissible (but nonexhaustive) list of uses recognized by Rule 404(b), including knowledge, intent, plan, motive, identity and lack of mistake or accident.

### iii. The Evidence is Reliable

The evidence proffered in Paragraph #1 and Paragraph #2 also meets the Fourth Circuit's test for reliability. Much of the evidence comes from written documentation – email statements written by Defendant to Pharmacist A, in addition to Pharmacist A's testimony related to his interactions with Defendant. The monetary transactions described in Paragraph #2 come from bank records, purchase records and other business records. The Fourth Circuit's case law establishes that evidence is deemed "reliable" for purposes of admission under Rule 404(b) and should be submitted to the jury for its consideration "unless it is 'so preposterous that it could not be believed by a rational and properly instructed juror.'" *Aramony*, 88 F.3d at 1378 (quoting *United States v. Bailey*, 990 F.2d 119, 123 (4th Cir. 1993) ("Reliability is not synonymous with credibility when dealing with 404(b) evidence. . . . Testimony is not unreliable simply because it is in conflict with or contradicted by other testimony. Nor is it unreliable because a witness has an unsavory past. These are merely circumstances for the jury to consider."); *see also United States v. Cowden*, 882 F.3d 464, 473 (4th Cir. 2018) (applying the *Aramony/Bailey* standard); *United States v. Hornsby*, 666 F.3d 296, 308 (4th Cir. 2012) (reaffirming that "evidence is reliable and should be submitted to the fact finder" unless the Court finds it is preposterous under the *Aramony/Bailey* standard); *Siegel*, 536 F.3d at 319.

Courts have recognized that, in this context, "corroborating evidence to support the prior-act evidence is not required." *United States v. Hornsby*, 666 F.3d 296, 308 (4th Cir. 2012); *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) ("The reliability threshold is not a high one, and the testimony of a single witness can be sufficient."); *United States v. Johnson*, 872 F.2d 612, 624 (5th Cir. 1989) ("No 'independent proof' [of Rule 404(b) evidence] was necessary.").

Here, the evidence is highly reliable, because much of it comes in the form of business records and also written statements made via email, from Defendant to Pharmacist A. Additionally, although not required, Pharmacist A corroborates the information contained within the written email communications. The proffered evidence certainly has sufficient indicia of reliability and is therefore admissible.

For all of these reasons, the information outlined in Paragraph # 1 and Paragraph #2 proffered above, meets the requirements for admissibility under Fed. R. Evid. 404(b).

### c. Rule 403

Once evidence of extrinsic acts is found to be admissible under Fed. R. Evid. 404(b), the court must still consider Federal Rule of Evidence 403, which states that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." *See Morgan v. Foretich*, 846 F.2d 941, 944 (4th Cir. 1988). As the Fourth Circuit has observed, "all evidence suggesting guilt is prejudicial to a defendant." *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006). That kind of general prejudice, however, is not enough to warrant exclusion of otherwise relevant, admissible evidence. Once the Court finds that the proffered item is properly admissible under Rule 404(b), the burden on Defendant to establish that it should nevertheless be excluded under Rule 403, is almost prohibitively high.

It is well established that, where evidence sought to be excluded under Rule 403 is probative, the balance under Rule 403 should be struck in favor of admissibility, and that the evidence should be excluded very sparingly. *Aramony*, 88 F.3d at 1378. Likewise, in *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007), the Fourth Circuit emphasized that the exclusion of evidence pursuant to Rule 403 should be ordered very rarely, because the general policy of the Federal rules is that all relevant material should be laid before the jury.

In *United States v. Barrie*, 629 F. App'x 541, 543–44 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1691, (2016), the defendant was charged with Wire Fraud and Aggravated Identity Theft and had a prior offense of Conspiracy to Commit Wire and Mail Fraud. The trial court ruled the evidence was admissible under Fed. R. Evid. 404(b), which the Fourth Circuit found was not an abuse of the trial court's wide discretion in these matters. As in *Barrie*, the evidence proffered here must pass Rule 403 muster as not being unduly prejudicial.

The Fourth Circuit has long affirmed that the showing of undue prejudice required by Rule 403 permits exclusion of relevant evidence only where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior. *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980); *United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir. 1986) ("The prejudice which the rule is designed to guard against is jury emotionalism or irrationality."). Evidence is not unfairly prejudicial (and is unlikely to give rise to jury emotionalism or irrationality) when it involves conduct that is either substantially similar to, or no more sensational and disturbing than, the crimes with which the defendant is charged. See, e.g., Siegel, 536 F.3d at 315-20. As described above, the proffered evidence involves conduct that is

17

substantially similar to, and no more sensational or disturbing than the crimes with which Defendant is charged.

Furthermore, a curative instruction will appropriately and sufficiently address any concern related to Rule 403. Throughout the federal courts' Rule 404(b) jurisprudence, it is consistently affirmed that limiting instructions are a proper, appropriate and effective safeguard against any potential unfair prejudice or jury misunderstanding or confusion about the proper uses of such evidence. *See, e.g.*, *Huddleston*, 485 U.S. at 691-92; *Queen*, 132 F.3d at 997 ("In cases where the trial judge has given a limiting instruction on the use of Rule 404(b), the fear that the jury may improperly use the evidence subsides."); *Aramony*, 88 F.3d at 1378; *United States v. Powers*, 59 F.3d 1460, 1468 (4th Cir. 1995) ("cautionary instructions generally obviate such prejudice"); *Greenwood*, 796 F.2d at 53 ("the trial judge gave a cautionary instruction, which was sufficient to overcome whatever unfair prejudice might have existed"); *United States v. Silva*, 745 F.2d 840, 844 (4th Cir. 1984) ("Any prejudicial effect of the necessary introduction of the defendant's past conviction can, we feel, be avoided through the use of a limiting construction.").

## IV.  Conclusion

Wherefore, for the reasons detailed above, the Government submits that the evidence summarized above should be admitted in the Government's case in chief. The evidence outlined at Paragraph #1 and Paragraph #2 is direct evidence related to elements that the Government must prove at trial. Furthermore, the evidence in Paragraph #1 and Paragraph #2 is intrinsic to the charges that will be under consideration by the jury.

Alternatively, the evidence outlined at Paragraph #1 and Paragraph #2 is relevant and admissible under both Fed. R. Evid. 404(b) and Fed. R. Evid. 403. In the event the Court admits

the offense conduct pursuant to Fed. R. Evid. 404(b), the Government respectfully requests that the Court provide the jury a cautionary instruction concerning the permissible uses of extrinsic act evidence, both when the evidence is admitted and again at the close of the case. *See Powers*, 59 F.3d at 1467 ("as to prejudicial effect, cautionary or limiting instructions generally obviate any such prejudice").

                                        Respectfully submitted,

                                        Erek L. Barron
                                        United States Attorney

By:       /s/
                                        Christine Duey
                                        Paul Riley
                                        Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that a copy of the foregoing document was served electronically via ECF to counsel of record for the defendant.

                 /s/
                 Christine Duey
                 Paul Riley
                 Assistant United States Attorneys